STATE of North Dakota, Plaintiff
and Appellee,

v.

Gerard W. KOTTENBROCH,
Defendant and Appellant.

Cr. No. 808.

Supreme Court of North Dakota.

May 13, 1982.

Rodney Feldner, Asst. States Atty., Mandan, for plaintiff and appellee.

Kelsch, Kelsch, Bennett, Ruff & Austin, Mandan, for defendant and appellant; argued by Arlen M. Ruff, Mandan.

ERICKSTAD, Chief Justice.

Gerard W. Kottenbroch appeals from a verdict of guilty of the crime of possession of a controlled substance (marijuana—less than one-half ounce), the order deferring imposition of judgment and sentence, and the order of the court denying suppression of the evidence introduced against him at trial. On appeal he argues that the arresting officer did not have probable cause to believe that a crime was being committed and thus the warrantless search of his motor vehicle violated his Fourth Amendment rights. Secondly, he argues that Section 29–07–01.1 of the North Dakota Century Code, mandating that an indigent defendant reimburse the county for the costs of his court-appointed counsel, is unconstitutional. We affirm the verdict of guilty, order deferring imposition of judgment and sentence, and the order denying suppression of the evidence.

On June 14, 1981, Kottenbroch was driving a 1968 Rambler stationwagon on Interstate 94 west of Mandan. His stationwagon was clocked by an aircraft and determined to be traveling at 68 miles per hour. Officer Houston of the North Dakota State Highway Patrol stopped the Rambler and asked Kottenbroch to produce his driver's license. Kottenbroch's license revealed that he was eighteen (18) years of age. Kottenbroch's brother, Mark, age 25, was seated in the passenger seat of the Rambler.

When Officer Houston looked in the window of the Rambler, he noticed beer cans on the front floor of the passenger's side of the vehicle. He also saw beer cans on a mattress which was in the back of the car. Officer Houston testified that he asked the passenger whether the cans contained any beer. At least one of the beer cans was held up and determined to be empty. Officer Houston then asked Kottenbroch and his brother to get out of the car. They had to get out of the passenger's side because the driver's door would not open. Officer Houston then walked around the car to the passenger's side and entered the car through the passenger's door. Officer Houston testified that when he reached inside the car to check the beer cans, he noticed an odor of marijuana. He testified that he had been trained in identifying the sight and odor of marijuana at the North Dakota State Highway Patrol Academy and had been involved in numerous cases subsequent to that training where he had occasion to see and smell marijuana.

After smelling the marijuana, Officer Houston continued his search for beer cans. He reached under the passenger's seat and found a glass tube, approximately a foot

and a half long and an inch and a half to two inches in diameter. The tube had what Officer Houston believed to be marijuana resin on it. Officer Houston then conducted a complete search of the interior and discovered another glass tube in the glove compartment, a roach clip, a 35 millimeter film cannister with marijuana in it, and a bag of marijuana seeds under the mattress in the back of the vehicle. After Gerard Kottenbroch had been placed under arrest and taken to the Morton County Jail, jailer Roger Halverson discovered a bag of marijuana in the defendant's front shirt pocket. Officer Houston's search of the car included a search underneath the front seat, in the ash tray, in the glove compartment, in a fatigue jacket lying in the car, and under a mattress lying in the rear of the car.

Gerard Kottenbroch was charged and subsequently convicted at a jury trial in the County Court with Increased Jurisdiction of Morton County of possession of a controlled substance. The court imposed a deferred imposition of sentence upon Kottenbroch's compliance with a number of conditions, including the repayment of his court-appointed attorney's fees.

On October 8, 1981, a motion for reduction or correction of sentence was made by Kottenbroch pursuant to Rule 35 of the North Dakota Rules of Criminal Procedure. A hearing on that motion was set for October 26, 1981. On October 14, 1981, notice of appeal was served by Kottenbroch. The hearing on the Rule 35 motion was held on October 26, 1981, and that motion was denied. Four issues are presented on this appeal:

1. Does a Rule 35 motion to reduce a criminal defendant's sentence presuppose that the conviction is valid?
2. Did Officer Curtis Houston conduct a valid search of the motor vehicle operated by Kottenbroch?
3. Is the order deferring imposition of judgment and sentence appealable?
4. Can a court include in its sentencing of a defendant, who has been found guilty following a jury trial, a condition requiring the defendant to reimburse the county for the costs of the defendant's court-appointed counsel?

Kottenbroch argues that the issue concerning the validity of the search of a motor vehicle should be more precisely framed: Does the presence of *one empty beer can*, without more, establish probable cause to allow an officer to conduct a warrantless search of a motor vehicle? The record in this case, however, indicates that Officer Houston saw more than one empty beer can when he looked through the windows of the Rambler. We therefore do not adopt Kottenbroch's statement of the issue.

We will discuss each of the issues separately.

I. Does a Rule 35 motion to reduce a criminal defendant's sentence presuppose that the conviction is valid?

The State contends that because a Rule 35 motion is essentially a plea for leniency and because courts have stated that it presupposes a valid conviction, it follows that Kottenbroch's making of a Rule 35 motion precludes this appeal.[1]

1. Kottenbroch's Rule 35 motion was made on October 8, 1981, and his notice of appeal was filed on October 14, 1981. A hearing was set on the motion for October 26, 1981. On October 21, 1981, Kottenbroch filed a motion with this court requesting that this case be remanded to the trial court for the limited purpose of determining his Rule 35 motion. We granted that motion on October 22, 1981, and remanded the case to the Morton County Court of Increased Jurisdiction for that limited purpose. The State cites *United States v. Ellenbogen*, 390 F.2d 537 (2nd Cir. 1968), in support of its proposition that Kottenbroch forfeited his right to appeal. The Court in *Ellenbogen*, however, addressed the issue of remanding for Rule 35 motion purposes as follows:

"It is essential to orderly functioning of the procedures for review that once a case has left the district court and is proceeding to the court of appeals and thence to the Supreme Court, the district court cannot make changes in the record of the case or in the disposition made of it [12]" *Id.* at 542.

Footnote 12, cited in the above-quoted portion from the case, states:

"This does not affect or limit the power of the reviewing court to remand a case to a lower court for a specific purpose while an appeal is pending." (Citations omitted.)

While courts have said that a Rule 35 motion presupposes a valid conviction, we disagree with the State that such language precludes an appeal by a defendant who has made a Rule 35 motion. *See United States v. Ellenbogen*, 390 F.2d 537, 543 (2d Cir. 1968); *Poole v. United States*, 250 F.2d 396, 401 (D.C.Cir.1957).

The State's view of those cases would make Rule 35 motions and appeals mutually exclusive remedies. We have found nothing to support such a view. To the contrary, we believe that a more logical interpretation of those cases is that a Rule 35 motion presupposes a valid conviction only for the purposes of a hearing on that motion. A criminal defendant in the State of North Dakota has a statutory right to appeal. § 29–28–03, N.D.C.C. The interpretation urged by the State would abridge that statutory right. We are unwilling to adopt that interpretation and therefore address the substantive issue of whether or not Officer Houston's search was valid.

II. Did Officer Curtis Houston conduct a valid search of the motor vehicle operated by Kottenbroch?

We have concluded that Officer Houston's warrantless search was valid under the automobile exception to the warrant requirement and plain view doctrine.

Although a warrantless search violates the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 8, of the North Dakota Constitution, there are specific established and well delineated exceptions to that rule. One of those exceptions is the automobile exception. *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

■ A warrantless search and seizure by a police officer is constitutionally permissible only if there is compliance with the following two prerequisites: (1) the officer must have probable cause to believe that seizable items are located in the place to be searched; and (2) the circumstances must bring the search within one of the exceptions to the rule that a search must be based upon a valid search warrant. *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970); *State v. Meadows*, 260 N.W.2d 328 (N.D.1977); *State v. Stockert*, 245 N.W.2d 266 (N.D. 1976). Kottenbroch's only argument on appeal is that Officer Houston did not have probable cause to search the Rambler. He raises no argument concerning the application of the automobile exception.

■ The premise of Kottenbroch's argument is that Officer Houston had nothing more than a mere suspicion that a crime was being committed. Searches based on a mere suspicion are invalid. *State v. Gagnon*, 207 N.W.2d 260 (N.D.1973). For a warrantless search of an automobile to be permissible, the searching officer must have probable cause to believe that incriminating evidence is in the automobile, and the search must be of limited scope.[2] *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

We defined probable cause in *State v. Binns*, 194 N.W.2d 756, 759 (N.D.1972), as follows:

"[A]utomobiles and other conveyances may be searched without warrants under circumstances that would not justify a search without a warrant of a home or an office, provided there is probable cause to believe that the automobile contains articles that the officer is entitled to seize. Therefore, if the search of an automobile without warrant is made upon probable cause, *based upon a reasonable belief arising out of the circumstances known to the officer—that the automobile contains articles which are subject to seizure*—the search is valid." (Emphasis added.) 194 N.W.2d at 759.

In *State v. Meadows*, 260 N.W.2d 328, 330 (N.D.1977), a factually similar case, a depu-

---

*Ellenbogen* does not support the State's position and, in fact, approves the procedure used in this case.

**2.** For a discussion of the interaction between probable cause and the seriousness of the offense, *see* 1 W. LaFave, Search and Seizure, § 3.2(a) (1978).

ty sheriff observed Meadows simultaneously driving a motor vehicle and drinking out of a beer bottle. He followed Meadows into a truck stop parking area to investigate the apparent violation of the open bottle law and, upon looking into the vehicle, saw a partially opened six pack of beer and smelled the odor of alcohol. He continued his search and discovered a pistol in the console. In affirming the conviction for carrying a pistol in a motor vehicle without a license, we concluded that the officer had sufficient probable cause to make a warrantless search of the interior of Meadow's vehicle. We noted the deputy sheriff's testimony that his prior experience was that "most of the time a party consuming alcoholic beverages on a highway also has more alcohol concealed in the vehicle." *Id.* at 331.

The following observation by the United States Supreme Court, in *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949), cited in *State v. Meadows, id.*, is helpful in determining the question of whether or not Officer Houston had probable cause to believe that evidence of a crime would be found in Kottenbroch's Rambler:

> " 'In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . .

> . . . . .

> " 'These long-prevailing standards seek to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime. They also seek to give fair leeway for enforcing the law in the community's protection. Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. *The rule of probable*

*cause is a practical, nontechnical conception affording the best compromise that has been found for accommodating these often opposing interests.* Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.' " (Emphasis added.) 260 N.W.2d at 331.

■ The constitutional requirement, therefore, mandates that Officer Houston's search must have been made upon probable cause, based upon a reasonable belief arising out of the circumstances known to him at the time, that Kottenbroch's Rambler contained seizable articles. The reasonableness of Officer Houston's belief, however, should be judged in light of the practical and factual considerations law enforcement personnel are called to act upon in their myriad of duties. *State v. Meadows*, 260 N.W.2d at 331.

Kottenbroch argues that the existence of empty beer cans in his car are as indicative of innocent behavior as they are of illegal behavior and therefore could raise nothing more than a mere suspicion of criminal behavior. For example, Kottenbroch contends that he could have a beer can collection, or he and his brother could have been retrieving the beer cans to collect the deposit given for the aluminum in the cans.

■ While we agree that the existence of beer cans in the Rambler could be explained by innocent behavior, we do not believe that Officer Houston should have looked the other direction when he saw the beer cans. As a law enforcement officer, Houston acted properly and responsibly when he searched the Rambler for additional beer cans. Although the exposed beer cans were empty, it was reasonable for Houston to believe that there may have been open or unopen beer cans containing beer under the seat or in the glove compartment.

Officer Houston had determined that Gerard Kottenbroch was a minor. He therefore could reasonably have determined that Kottenbroch may have been violating the minor in possession of an alcoholic bev-

erage statute or the open container statute. Thus, he had probable cause to search the car for beer cans containing beer.

■ Having probable cause to believe that the Rambler contained evidence of an offense, Officer Houston began his search in an area well within the limited scope required. He looked under the seat on the passenger's side, and found a glass tube. At the same time he detected the odor of marijuana. The glass tube was properly seized under the plain view doctrine. A seizure of evidence of a crime found in plain view is legitimate even though the items seized are not listed in the search warrant or, if the search is a warrantless search, the items are not items for which the searching officer had probable cause to believe were in the area being searched. To fall within the plain view doctrine, the initial intrusion must be supported either by a warrant or by one of the recognized exceptions to the warrant requirement. Additionally, the discovery must be inadvertent and within the proper scope of the search. *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564 (1971).

■ In this case, Officer Houston had probable cause to search Kottenbroch's Rambler for beer cans containing beer. In the process of that proper search he inadvertently came across the incriminating glass tube containing marijuana resin. That tube was thus properly seized under the plain view doctrine. The glass tube, in conjunction with the odor of marijuana which Officer Houston had been trained to detect, gave him probable cause to conduct a more thorough search of the interior of the car. Therefore, Officer Houston's seizure of the 35 millimeter cannister containing marijuana, the roach clip, and the bag beneath the mattress in the back of the car containing marijuana, was valid.

III. Is the order deferring imposition of judgment and sentence appealable?

■ The State argues that an order deferring imposition of judgment and sentence is not appealable, citing *State v. Carroll*, 123 N.W.2d 659 (N.D.1963), as support.

While we held in *Carroll* that such an order is not appealable, and under the current provisions of the North Dakota Century Code it continues to be a non-appealable order, it is *reviewable* upon appeal from a verdict or judgment.

The 1965 legislature, apparently in response to *Carroll*, appears to have attempted to make orders deferring or suspending imposition of sentence appealable. The intent of the legislature to make orders deferring or suspending imposition of judgment and sentence appealable, or at least reviewable upon proper appeal of a verdict of guilty, is reflected by the following statement in the January 14, 1965, Minutes of the House Judiciary Committee:

"Rep. Jungroth sponsor of the bill explained that 553 and 554 were related bills wherein it was felt that any man has the right to appeal to the supreme court from any verdict—suspended or otherwise."

House Bill No. 553 added Section 12–53–20, N.D.C.C., to Chapter 12–53 of the North Dakota Century Code. Chapter 12–53 provides for suspended sentences. Section 12–53–20, N.D.C.C., as adopted by the 1965 legislature, provides:

"Nothing in this chapter shall be construed as precluding the defendant in a criminal action from appealing to the supreme court under the provisions of chapter 29–28."

House Bill No. 554 amended the Criminal Appeals Act, Chapter 29–28, N.D.C.C. Relevant sections of the amendment permit an appeal by a defendant from a verdict of guilty, codified at Section 29–28–06, N.D.C.C., and permit this court on appeal from a verdict or judgment to "set aside, affirm, or modify any or all the proceedings subsequent to or dependent upon such verdict, judgment, or order." § 29–28–28, N.D.C.C., (1974). That section has since been superseded by Rule 35(d), N.D.R.App.P.

An order deferring imposition of sentence and judgment is the result of a proceeding subsequent to and dependent upon the verdict. We therefore conclude that the order

in this case is reviewable on the appeal from the verdict.[3]

IV. Can a court include in its sentencing of a defendant, who has been found guilty following a jury trial, a condition requiring the defendant to reimburse the county for the costs of the defendant's court-appointed counsel?

Kottenbroch argues that the North Dakota recoupment statute, Section 29–07–01.1, N.D.C.C., is unconstitutionally vague and in violation of the due process and equal protection clauses of the United States Constitution. We have concluded that North Dakota's recoupment statute is constitutional.

■■■■ Before analyzing Kottenbroch's argument, we repeat the well-recognized rules of construction summarized in *State v. Hanson*, 256 N.W.2d 364, 366 (N.D.1977); and *State v. Hagge*, 211 N.W.2d 395, 397 (N.D.1973). Acts of the legislature enjoy a presumption of constitutionality, and to rebut that presumption it must be shown that they clearly violate some provision of the Constitution. Additionally, statutes are to be construed practically, construing words in their ordinary sense and determining legislative intent from the statute as a whole. If there are two possible constructions of a statute, we must choose the one which, without doing violence to the statute, will render it valid. *Id.*

■■■■ The repayment by an indigent defendant to the State for the cost of his court-appointed attorney is provided for in Section 29–07–01.1, N.D.C.C. That section provides in relevant part:

"A defendant with appointed counsel shall pay to the county or state such sums as the court shall direct. The state's attorney of the county wherein the action was prosecuted shall seek recovery of any such sums any time he determines the person for whom counsel was appointed may have funds to repay the county or

state within six years of the date such amount was paid on his behalf." § 29–07–01.1, N.D.C.C.

In support of his arguments, Kottenbroch cites *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974); and *James v. Strange*, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972).

The Supreme Court, in *James*, held the Kansas recoupment statute unconstitutional. That statute provided that the debt became a lien on the real estate of the defendant, and because the defendant was not accorded any of the exemptions, except the homestead exemptions, provided by the Kansas Code for other judgment debtors, the Court held that the statute violated the Equal Protection Clause of the United States Constitution.

In *Fuller*, the Supreme Court upheld Oregon's recoupment statute against attacks of constitutional infirmity. The Oregon statute, however, was "carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so." *Fuller v. Oregon*, 417 U.S. at 53, 94 S.Ct. at 2124. The Oregon statute did not deny indigent defendants the exemptions from execution afforded to other judgment debtors. In fact, a separate provision directed that "[a] judgment that the defendant pay money, either as a fine or as costs and disbursements of the action, or both, shall be docketed as a judgment in a civil action and with like effect. . . ." 417 U.S. at 47, 94 S.Ct. at 2122.

The North Dakota recoupment statute, while not expressly granting indigent defendants all exemptions accorded to other judgment debtors as in *Fuller*, does not expressly deny any exemptions either, as in *James*. Without a provision expressly denying exemptions, indigent defendants in North Dakota are entitled to all exemptions from process granted to other judgment debtors. Kottenbroch's argument that

---

**3.** Our conclusion permitting review of an order deferring imposition of sentence is consistent with the American Bar Association Standards for Criminal Justice. ABA Standard 18–2.3(iv) reads: "A sentence to probation should be treated as a final judgment for purposes of appeal and similar procedural purposes." III American Bar Association Standards for Criminal Justice, Sentencing Alternatives and Procedures, Ch. 18–2.3(iv) (2d ed. 1980).

North Dakota's recoupment statute is constitutionally infirm because it does not expressly permit an indigent defendant to claim exemptions allowed to other judgment debtors, therefore is without merit.

The second argument made by Kottenbroch is that the statute is unconstitutional because it appears to be mandatory and not discretionary. This argument is valid when applied to a situation, such as this case, where a probationer may have his probation revoked because of his inability, though he may be willing, to pay. This infirmity is cured, however, by requiring the court to find that a probationer is capable, but unwilling, to repay the costs of his defense before permitting a revocation of his probation. *Fuller v. Oregon*, 417 U.S. at 48, fn. 9, 94 S.Ct. at 2122, fn. 9. Legislation will be construed so that it will pass constitutional muster if possible. *Tang v. Ping*, 209 N.W.2d 624, 628 (N.D.1973) (Holding that males and females eighteen years of age and older will be treated uniformly in determining their residency for the Unsatisfied Judgment Fund, despite statute defining minors differently for males and females.). We therefore construe Section 29–07–01.1, N.D.C.C., to impose such a restriction on revocation of probation.

The third argument made by Kottenbroch is that the North Dakota recoupment statute is constitutionally infirm because it does not have the safeguards of the Oregon statute which survived constitutional challenge in *Fuller*. It is true that the statute in question does not provide the many safeguards found in the Oregon statute. However, our reading of *Fuller* and *James* brings us to the conclusion that a statute need not provide all the safeguards of the Oregon statute. Instead, it only needs to be fashioned so that it does not invidiously discriminate between an indigent defendant who becomes a judgment debtor by virtue of his retention of a court-appointed attorney and a non-indigent defendant or other judgment debtor. Our recoupment statute, as previously construed herein, allows an indigent defendant the same exemptions any other person is entitled to. Further, as previously indicated herein, no probation can be revoked simply because the probationer is unable to pay the costs of his court-appointed counsel. We therefore conclude that North Dakota's recoupment statute does not invidiously discriminate between an indigent defendant and a non-indigent defendant or other judgment debtor.

Kottenbroch's fourth argument is that the recoupment statute violates due process because it does not provide the defendant with any type of hearing. Before probation may be revoked, however, the defendant must be given a hearing pursuant to Rule 32(f), N.D.R.Crim.P. At the hearing, the prosecution must establish by a preponderance of the evidence that a violation of a condition of probation has occurred. In this case the prosecution would have to prove that Kottenbroch was capable of, but unwilling to, repay the costs of his court-appointed counsel. Such a construction will prevent invidious discrimination between a probationer capable of repaying the costs of his attorney and one incapable of such repayment. *Fuller v. Oregon*, 417 U.S. at 48, fn. 9, 94 S.Ct. at 2122, fn. 9.

Kottenbroch's fifth argument is that the statute is unconstitutional because it does not specify whether it applies to all indigent defendants or only those who have been convicted. This argument is the flip-side of an argument made in *Fuller*. In that case, the petitioner argued that Oregon's statute requiring only convicted defendants to repay the cost of their court-appointed counsel denied him equal protection of the laws by discriminating between convicted defendants and acquitted defendants or those whose convictions are reversed. The Court said: " 'We do not inquire whether this statute is wise or desirable .... Misguided laws may nonetheless be constitutional.' ... Our task is merely to determine whether there is 'some rationality in the nature of the class singled out.' " 417 U.S. at 49, 94 S.Ct. at 2122. (Citations omitted.) Our recoupment statute does not discriminate between convicted defendants and acquitted defendants, and, therefore,

with no discrimination there can be no Equal Protection Clause violation.

▮ Kottenbroch next argues that requiring repayment as a condition of probation will have chilling effect on a defendant's exercise of his right to counsel. This argument is without merit. As the Court stated in *Fuller*: "The fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel." *Fuller v. Oregon*, 417 U.S. at 53, 94 S.Ct. at 2124. As we have construed Section 29–07–01.1, N.D.C.C., to require only probationers who are able to repay the costs of their defense to pay, we conclude the statute does not chill the right to counsel.

▮ Because we have concluded that Section 29–07–01.1, N.D.C.C., is constitutionally firm, we must address Kottenbroch's final argument. He argues that because the statute does not expressly provide that repayment may be made a condition of probation, such a condition may not be imposed. He argues that the legislature intended that repayment be treated as a civil judgment.

Section 12–53–13 of the North Dakota Century Code gives a sentencing judge wide discretion in imposing conditions for a deferred imposition of sentence. We believe it is wise to give the court discretion in offering a criminal defendant the opportunity to bring his future conduct into conformance with the laws society deems necessary to protect itself and to promote the general good. In *State v. Schlosser*, 202 N.W.2d 136 (N.D.1972), we said that the trial court has a responsibility to rehabilitate a probationer, regulate a probationer's activities, and guard against continued criminal behavior. In this case, the trial court determined that repayment of a probationer's attorney's fees would be appropriate. We believe that requiring that this be done is a reasonable means of educating the probationer as to the costs involved and of impressing upon him his responsibility for them. Further, we believe it will help deter him from future criminal activity and at the same time permit him to avoid the stigma of a criminal conviction record. The condition requiring repayment may also act as an incentive to the probationer to more vigorously seek employment and thereby help him to become a more useful and productive member of society.

The legislature has given the court discretion in imposing conditions of probation. Section 12.1–32–07(1), N.D.C.C., provides that the court may impose conditions of probation "as the court in its discretion deems reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist him to do so." That is a very general grant of discretion.

The legislature, in Section 12.1–32–07(2), N.D.C.C., provides in effect that "the court may impose such conditions as it deems appropriate, and may include any one or more of the following." The statute then delineates 15 specific conditions of probation courts may impose. The language of the statute, however, is not restrictive.[4] Instead, the legislature used the permissive term "may" in its reference to the specified conditions of probation courts may impose. In light of legislative authorization of recoupment in Section 29–07–01.1, N.D.C.C., we conclude that the trial court did not abuse its discretion by imposing as a condition of Kottenbroch's probation a requirement that he repay the costs of his court-appointed defense counsel.

---

4. In construing Section 12.1–32–07, N.D.C.C., we have not ignored the maxim of statutory construction "Expressio unius est exclusio alterius" (that which is expressed puts an end to that which is implied). A limitation on that maxim, however, is that where an expanded interpretation of a statute will serve the purpose for which the statute was enacted the maxim should be disregarded and an expanded meaning given. 2A Sands, Sutherland Statutory Construction, § 47.25 (4th ed. 1973). The purpose of Section 12.1–32–07 is stated in subsection (1), as providing conditions of probation that will help the defendant to lead a law-abiding life. We believe the condition imposed in this case serves the purpose of the statute.

As we said in *State v. Faul*, 300 N.W.2d 827, 833 (N.D.1980), "The court in sentencing a defendant may use *any* legitimate sentence and may suspend a part of the sentence upon certain conditions. Section 12–53–13, NDCC." (Emphasis added.)

For the reasons stated in this opinion, we affirm.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.