The STATE of North Dakota,
Plaintiff and Appellee,

v.

Mario E. SAAVEDRA, Defendant
and Appellant.

Crim. No. 1172.

Supreme Court of North Dakota.

May 28, 1987.

Wayne D. Goter, Asst. State's Atty., Mandan, for plaintiff and appellee.

Bickle, Coles & Snyder, Bismarck, for defendant and appellant; argued by James J. Coles.

LEVINE, Justice.

Mario E. Saavedra appeals from a criminal judgment revoking his probation. We affirm.

Pursuant to a formal plea agreement, Saavedra pleaded guilty to the felony of gross sexual imposition. Under the plea agreement, imposition of sentence was to be deferred for two years during which time Saavedra would abide by the rules and regulations of the Board of Pardons and Parole, commit no criminal violations and submit to an evaluation and complete any prescribed treatment. The trial court accepted the plea agreement and incorporated these conditions into its order deferring imposition of judgment and sentence. The trial court also ordered Saavedra to sign a probation agreement with the probation officer, stating:

"You will be subject to the rules and regulations of the Board of Pardons and Parole, a whole book, in effect. You will also be required to sign an agreement, in effect, a contract, with the parole officer. Those rules and regulations, if you violate them, it's the same as if I had announced that regulation here in court. I adopt them. I know what they say. I know what the agreement is. Indeed, I helped write the agreement."

Two weeks later, Gary Masching, Saavedra's probation officer, filed a petition for revocation of probation on the grounds that Saavedra failed to sign a probation agreement. At the revocation hearing, Saavedra testified that he was then willing to sign the probation agreement and abide by its terms. The trial court declined to revoke Saavedra's probation.

About two months later, Masching filed a second petition for revocation of Saavedra's probation. At the revocation hearing, the trial court found that Saavedra violated the terms of his probation agreement by failing to provide a urine sample when requested to do so by Masching. The court revoked Saavedra's probation and sentenced him to forty-five days in the county jail. Saavedra appeals from the criminal judgment and commitment and raises three issues:

I

Whether the trial court's finding that Saavedra violated a condition of his probation is supported by a preponderance of the evidence; and, if so, whether such violation warrants revocation.

II

Whether Saavedra's probation may be revoked given the manner in which the conditions of his probation were imposed.

III

Whether the trial judge was so biased and prejudiced against Saavedra that he

should have recused himself from hearing the second revocation proceeding.

## I.

Saavedra argues that the trial court's finding that he violated a condition of his probation by failing to provide a urine sample when requested to do so by Masching was clearly erroneous because the violation is not shown by a preponderance of the evidence. Even if supported by sufficient evidence, Saavedra claims the violation is not serious enough to justify revocation of his probation.

■ While we have stated that our standard of review of a probation revocation is an abuse of discretion, revocation proceedings really encompass a two-step analysis which requires a bifurcated review on appeal. First, we must review the trial court's factual determination that the defendant violated the terms of his probation, and then the trial court's discretionary determination that the violation warrants revocation.

■ Under the first prong of the analysis, the prosecution has the burden of establishing a violation by a preponderance of the evidence. *State v. Altringer*, 388 N.W.2d 864, 865 (N.D.1986). Generally, the preponderance of the evidence standard of proof applies in civil cases where we review fact findings under the clearly erroneous standard. However, we have also applied the clearly erroneous standard in criminal cases when reviewing fact findings made by the trial court. *See, e.g., State v. Padgett*, 393 N.W.2d 754, 757 (N.D.1986); *State v. Olmstead*, 246 N.W.2d 888, 890 (N.D.1976). Accordingly, we will review a trial court's factual finding of a violation of probation under the clearly erroneous standard.

■ A finding of fact is clearly erroneous when, although there may be evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made. *City of Fargo v. Case Development Co.*, 401 N.W.2d 529, 531 (N.D.1987). In reviewing factual determinations we do not re-examine findings of fact decided by the trial court upon conflicting evidence; nor do we appraise the credibility of witnesses. *See Buzzell v. Libi*, 340 N.W.2d 36, 39 (N.D.1983). These are functions of the trial court and we will not substitute our judgment for that of the trial court when there is testimony to support its findings. *Buzzell v. Libi, supra.*

■ At the second revocation hearing, Masching testified that he requested Saavedra to provide a urine sample for a drug test and gave Saavedra two opportunities to comply, but Saavedra did not comply with the first request and did not show up for a second appointment. Saavedra claims that Masching did not make an appointment for a second test. The trial court apparently believed Masching's testimony, an appraisal we will not second-guess. We conclude that the trial court's finding that Saavedra violated a condition of his probation by failing to submit to a drug test is not clearly erroneous.

■ Once a violation of a condition of probation is established, the trial court is authorized to revoke an order suspending a sentence or an order suspending the imposition of a sentence, or to continue probation on the same or different conditions. Rule 32(f)(2)(iii), North Dakota Rules of Criminal Procedure. Because the decision to revoke or to continue probation is discretionary with the trial court, we review the trial court's decision to revoke under the abuse of discretion standard. *State v. Altringer, supra.*

■ Saavedra argues that because Masching was not justified in requesting a drug test, violation of this condition does not warrant revocation. However, the trial court found that Masching's request was reasonable and that Saavedra was no longer a suitable candidate for probation. We are not persuaded that the trial court abused its discretion in revoking Saavedra's probation.

## II.

Saavedra next argues that the trial court unlawfully delegated to a probation officer the authority to enlarge or modify the con-

ditions of probation by allowing Masching to complete a probation agreement[1] without explicit directions from the court. We agree.

The Legislature has given the trial court the authority to prescribe conditions of probation under a deferred imposition of sentence. North Dakota Century Code § 12–53–13. However, in this case, instead of itself setting the terms of probation, the trial court ordered Saavedra to obey the conditions encompassed within a probation agreement, the development of which the trial court had worked on and the terms of which it knew. The problem is that while ten of the terms and conditions of the agreement are standard, nine are optional. In this case, it was the probation officer, not the court, who decided which of the nine optional conditions should apply to Saavedra. At issue is violation of one of these optional conditions, the submission to drug testing when requested by a probation officer.

■ While there may be no problem with the trial court's relying on and ordering a pre-established standardized list of probation terms, *see State v. Pike*, 49 Or.App. 67,

618 P.2d 1315 (1980), we believe it is unauthorized and unlawful for the trial court to allow a probation officer to pick and choose among optional terms of probation contained within that agreement. It is the trial judge, and not the probation officer, who is authorized under our statutory scheme to establish conditions of probation.

Section 12–53–13, NDCC, gives a sentencing judge wide discretion in imposing conditions for a deferred imposition of sentence. *State v. Kottenbroch*, 319 N.W.2d 465, 474 (N.D.1982). Section 12–53–13, NDCC, provides:

"When a defendant has been found guilty of a crime, whether or not for the first time, the court having jurisdiction thereof, upon application or its own motion may, in its discretion, suspend the imposing of the sentence and may direct that such suspension continue for a definite period of time, *upon such terms and conditions as it may determine* ...." [Emphasis supplied.]

The Legislature has also given the court discretion in imposing conditions of probation under NDCC § 12.1–32–07.[2] *State v.*

1. The probation agreement is a printed form that lists ten "standard" conditions and nine "optional" conditions of probation to be "initiated at the discretion of the probation officer." Brackets appear in front of the nine optional conditions to be checked if that particular condition is to apply to the probationer. Optional conditions numbered 17, 18 and 19 are left blank presumably to allow the probation officer to impose additional conditions tailored to the particular needs of the probationer. Masching completed Saavedra's probation agreement during their first meeting and imposed these optional conditions:

"11. [X] I will submit to a medical examination or other testing procedures for the purpose of determining whether I have used or consumed any alcoholic beverage, narcotic drug, marijuana or any other controlled substance whenever requested to do so by a Probation Officer."

"13. [X] I will not travel beyond a 100 mile radius of Bismarck, ND without advance written approval of my Probation officer."

"14. [X] I will upon the recommendation of my assigned probation Officer participate in a clinical evaluation at Human Services Center relative to possible chemical dependency/emotional problems. I further agree to comply with the recommendations made by

representatives of the Human Services Center concerning treatment possibilities of my diagnosed chemical/emotional problems."

"15. [X] I will allow my person, place of residence or vehicle to be searched and any contraband or evidence found thereon or therein to be seized at any reasonable time of the day or night by any Probation Officer without requiring such Probation Officer to obtain or present a search warrant."

2. Section 12.1–32–07, NDCC, provides in pertinent part:

"1. The conditions of probation shall be such as the court in its discretion deems reasonably necessary to ensure that the defendant will lead a law-abiding life or to assist him to do so. The court shall provide as an explicit condition of every sentence to probation that the defendant not commit another offense during the period for which the sentence remains subject to revocation.

2. When imposing a sentence to probation, the court may impose such conditions as it deems appropriate, and may include any one or more of the following:

a. Work faithfully at a suitable employment or faithfully pursue a course of study or of vocational training that will equip him for suitable employment.

*Kottenbroch, supra.* Section 12.1–32–07 allows the court to fashion any probation requirements it deems necessary to insure that the defendant will lead a law-abiding life. *State v. Bohl,* 317 N.W.2d 790, 796 (N.D.1982). The list of conditions under § 12.1–32–07 is not exclusive and the imposition of these conditions is purely a matter of judicial discretion so as to allow a judge to tailor conditions to meet particular facts and circumstances in any given case. *State v. Perbix,* 331 N.W.2d 14, 18 (N.D. 1983).

Section 12.1–32–07, NDCC, applies when the defendant is "sentenced to probation." In this case, the court deferred imposition of sentence and placed Saavedra on probation pursuant to § 12–53–14, NDCC. We have acknowledged there is a difference between a sentence to probation when execution of sentence is deferred and placing a defendant on probation when imposition of sentence is deferred. *State v. Siegel,* 404 N.W.2d 469 (N.D.1987); *John v. State,* 160 N.W.2d 37 (N.D.1968). However, NDCC § 12–53–14 provides that a defendant "placed on probation" under a deferred imposition of sentence is subject to the same rules and regulations as applied to persons "sentenced to probation." This indicates an intent to treat in similar fashion probation under either deferred imposition or deferred execution. Further, in *State v. Nace,* 371 N.W.2d 129, 132 (N.D.1985), we held that a chapter 12–53 "suspension" is a form of "probation" available under the sentencing alternatives of § 12.1–32–02, and is one of the "combinations" permissible under that section.[3] We conclude that § 12.1–32–07, NDCC, applies in this case along with ch. 12–53.

In construing the provisions of chapter 12–53 and NDCC § 12.1–32–07, it is clear that the Legislature gave the sentencing court, not the probation officer, the authority to impose conditions of probation. NDCC § 12–53–13; NDCC § 12.1–32–07(1).

b. Undergo available medical or psychiatric treatment and remain in a specified institution is [*sic*] required for that purpose.

c. Attend or reside in a facility established for the instruction, recreation, or residence of persons on probation.

d. Support his dependents and meet other family responsibilities.

e. Make restitution or reparation to the victim of his conduct for the damage or injury which was sustained, or perform other reasonable assigned work. When restitution, reparation, or assigned work is a condition of the sentence, the court shall proceed as provided in section 12.1–32–08.

f. Pay a fine imposed after consideration of the provisions of section 12.1–32–05.

g. Refrain from possessing a firearm, destructive device, or other dangerous weapon unless granted written permission by the court or probation officer.

h. Refrain from excessive use of alcohol, or any use of narcotics or of another dangerous or abusable drug without a prescription.

i. Permit the probation officer to visit him at reasonable times at his home or elsewhere.

j. Remain within the jurisdiction of the court, unless granted permission to leave by the court or the probation officer.

k. Answer all reasonable inquiries by the probation officer and promptly notify the probation officer of any change in address or employment.

l. Report to a probation officer at reasonable times as directed by the court or the probation officer.

m. Submit to a medical examination or other reasonable testing for the purpose of determining his use of narcotics, marijuana, or other controlled substance whenever required by a probation officer.

n. Refrain from associating with known users or traffickers in narcotics, marijuana, or other controlled substances.

o. Submit his person, place of residence, or vehicle to search and seizure by a probation officer at any time of the day or night, with or without a search warrant.

3. When a defendant is sentenced to probation, he shall be given a certificate explicitly setting forth the conditions on which he is being released.

4. The court may, upon notice to the probationer, modify or enlarge the conditions of a sentence to probation at any time prior to the expiration or termination of the period for which the sentence remains conditional. If the defendant violates a condition at any time prior to the expiration or termination of the period, the court may continue him on the existing sentence, with or without modifying or enlarging the conditions, or if such continuation, modification, or enlargement is not appropriate, may impose any other sentence that was available under section 12.1–32–02 or 12.1–32–09 at the time of initial sentencing."

**3.** In *State v. Siegel,* 404 N.W.2d 469 (N.D.1987), we construed conflicting provisions of ch. 12–53 and ch. 12.1–32 and were unable to give effect to both. In this case, there is no conflict.

This legislative plan is consonant with Standard 18–2.3(c)(ii) of the ABA Standards for Criminal Justice which provides that probation officers should have the authority to implement judicially prescribed conditions, but not to establish them. As the Commentary explains, the determination of the conditions of probation should be a judicial function, and the court, not the probation officer, should determine the scope and nature of the restrictions on the probationer's freedom:

"Inherently, probation conditions involve the regulation of liberty, and such regulation, to the extent it is necessary, is best given to the judiciary. Experience has shown that the judiciary has greater sensitivity to the individual's claims than does an administrative body, such as the probation department. In addition, since the probation department will enforce the probation conditions that are imposed, there is an unsettling aspect about allowing that agency to determine the conditions that it will supervise. This would be analogous to permitting the police to adopt the laws that they are to enforce. The temptation might be to define conditions broadly and ambiguously in order to simplify enforcement." III ABA Standards for Criminal Justice, Sentencing Alternatives and Procedures, 18–2.3, Commentary at 18.87–18.88 (2 ed. 1986).

The State argues that although the court did not expressly set forth the specific conditions of Saavedra's probation, the court referred to these conditions and obviously intended them to be incorporated into its sentencing order. Thus, the State argues that the trial court did not delegate to the probation officer the authority to impose conditions of probation.

▮▮▮▮ While the trial court may have been familiar with the conditions listed in the probation agreement form, it could not have known which optional conditions would be imposed upon Saavedra because the probation agreement was not completed at the time of sentencing. Masching completed the probation agreement during his first meeting with Saavedra, nine days after the sentencing hearing. Clearly, the optional conditions listed in the probation agreement were imposed at the discretion of Masching, not the trial court. Nor could the trial court have incorporated these conditions into its sentencing order before the agreement was completed. Accordingly, we find that the condition to submit to drug testing procedures was imposed by the probation officer, not by the court, and resulted in an unlawful delegation of authority.[4]

Other jurisdictions have reversed orders to revoke probation when the authority to impose the conditions of probation was unlawfully delegated to the probation officer. *E.g., State v. Stephens*, 47 Or.App. 305, 614 P.2d 1180 (1980), reconsideration denied, 50 Or.App. 595, 623 P.2d 1076 (1981) (revocation of probation based upon evidence seized during a search undertaken pursuant to a condition of probation imposed by a probation officer was invalid); *Hutchinson v. State*, 428 So.2d 739 (Fla. App.1983) (court vacated an order of revocation finding that the probation officer's directive that the probationer report to a rehabilitative program for therapy was not encompassed by the court-imposed condition requiring the probationer to comply

---

**4.** While a probation officer may not impose the conditions of probation, he is not precluded from exercising discretion pursuant to his authority to supervise the probationer. Several of the statutory conditions listed in § 12.1–32–07, NDCC, give the probation officer the authority to implement conditions of probation once imposed by the trial court. For example, § 12.1–32–07(2)(m), NDCC, requires the probationer to submit to drug testing "whenever required by a probation officer." If the trial court determines that drug testing is reasonably necessary to insure a successful probation and, accordingly,

imposes this condition, the probation officer then has the discretionary authority to implement this condition by determining when to request a drug test. Similarly, designating the dates, times, places and manner of reporting to the probation officer is a ministerial function necessary for the proper supervision of a probationer, not an unlawful delegation of the authority to impose conditions of probation. *See Johnson v. State*, 568 P.2d 355, 356 (Okla.Crim. App.1977); *Lassiter v. State*, 717 S.W.2d 458, 460 (Tex.Ct.App.1986).

with all instructions of his probation officer); *Costa v. State*, 58 Md.App. 474, 473 A.2d 942 (1984) (court held that because the probation officer's order directing the appellant to participate in a drug therapy program was beyond the general or specific terms of probation and therefore without authority of the sentencing judge, it was improper); *In re Collyar*, 476 P.2d 354 (Okla.Crim.App.1970) (the court cannot delegate its responsibility to state the terms and conditions of suspension); *People ex rel. Perry v. Cassidy*, 23 A.D.2d 706, 257 N.Y.S.2d 228 (1965) (where defendant was placed on a suspended sentence "on such terms as the probation officer shall provide you," the appellate court sustained the judgment granting petitioner's writ of habeas corpus because the conditions of probation were not determined by the court).

Although it was error for the trial court to delegate the authority to impose the conditions of probation, this issue was not raised at either revocation hearing.[5] The issue, therefore, has not been properly preserved for our consideration, and consequently our inquiry is directed to whether or not the error constitutes an obvious error which affects substantial rights of the defendant. Rule 52(b), NDRCrimP; *State v. Demery*, 331 N.W.2d 7, 11 (N.D.1983). Under the peculiar circumstances of this case, we conclude it does not.

■ In cases involving jury trials, we look to the relation of the error to the result of the trial in order to determine whether substantial rights were affected. *State v. Hendrickson*, 240 N.W.2d 846, 848 (N.D.1976). We examine the entire record and evaluate the error in the context of the circumstances in which it was made to see if it had a significant impact upon the jury's verdict. *State v. Demery, supra* 331 N.W.2d at 12. In this case we look to the relation of the error to the result of the revocation hearings to determine whether Saavedra's substantial rights were affected. Our power to notice obvious error is exercised cautiously and only in exceptional situations where the defendant has suf-

fered serious injustice. *State v. Miller*, 388 N.W.2d 522 (N.D.1986).

■ Because the trial court did not itself impose the specific conditions of probation, Saavedra did not know what they were until the probation agreement was completed by Masching at their first meeting. Finding the conditions too restrictive, Saavedra refused to sign the agreement. His recalcitrance provoked the first revocation hearing. At that hearing, Saavedra agreed to abide by the conditions of his probation and made no objection to the prior procedure. It is clear that at the first hearing the trial court and Saavedra knew the terms of probation, the trial court ordered and adopted them, and Saavedra agreed to follow them. The trial court did not then revoke Saavedra's probation. This leads us to conclude that the error did not result in or have a significant impact upon the subsequent revocation of Saavedra's probation. Consequently, Saavedra's substantial liberty rights are not affected and the error committed is not obvious error.

### III.

Saavedra's final argument is that the trial judge was so prejudiced and biased against him that the judge should have recused himself from hearing the second revocation proceeding. Saavedra claims bias and prejudice are shown by the Judge's comments that he saw Saavedra as a "young man who is rude, ill-mannered, self-important, self-justifying, with an enormous fault of minimizing your own faults."

■ These comments were made to Saavedra at the first revocation hearing when the trial judge declined to revoke Saavedra's probation, although he felt revocation was justified at that time. We believe the judge's comments were but a lecture, not uncommon or inappropriate at a sentencing or probation hearing, and did not indicate prejudice or bias against Saavedra. We deem Saavedra's argument to be wholly unpersuasive.

5. Saavedra's attorney on appeal is not the same    attorney he had at the revocation hearings.

In sum, the trial court's finding that probation was violated is not clearly erroneous and its decision to revoke Saavedra's probation is not an abuse of discretion. While the trial court erred in delegating the authority to impose conditions of probation, there is no obvious error. Accordingly, the trial court's criminal judgment and commitment is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE, and MESCHKE, JJ., concur.