#26684-rev & rem-JKK

**2014 S.D. 46**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

  v.

CHRISTOPHER WILLIAM BLAKNEY,              Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA C. RIEPEL
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                      Attorneys for plaintiff
                                          and appellee.


MARK KADI
Minnehaha County Office of
 the Public Advocate
Sioux Falls, South Dakota                 Attorneys for defendant
                                          and appellant.

* * * *

                                          CONSIDERED ON BRIEFS
                                          ON APRIL 28, 2014

                                          OPINION FILED **07/09/14**

#26684

KONENKAMP, Justice

[¶1.]        Christopher William Blakney appeals the revocation of his suspended

sentence for a probation violation.  He contends, among other things, that the

circuit court unlawfully delegated its judicial authority in allowing a Court Services

Officer to impose a condition of probation not ordered by the court.

## Background

[¶2.]        In two separate indictments, Blakney was charged with second-degree

rape, aggravated assault (domestic), attempted simple assault (domestic), simple

assault by recklessly causing bodily injury (domestic), and simple assault by

causing injury (domestic).  A Part II Information charged Blakney as a habitual

offender.  The second-degree rape charge stemmed from an incident with a minor on

July 16, 2011.  The minor, J.K.G., alleged that while she was babysitting for

Blakney's girlfriend, Blakney raped her.  The aggravated assault and remaining

charges arose from an incident with Blakney's girlfriend on August 2, 2011.  She

alleged that Blakney raped, beat, choked, and straddled her on the bed and held a

box cutter to her throat threatening to kill her.

[¶3.]        By agreement with the State, Blakney pleaded guilty to simple assault

in return for dismissal of the second-degree rape charge and the Part II

Information.  Although Blakney denied that he raped J.K.G., per the plea

agreement, he agreed that the State's version would provide the factual basis for his

plea.  *See State v. Englemann*, 541 N.W.2d 96, 101 (S.D. 1995) ("*Alford* plea")

(citation omitted).  Thus, the State relayed that J.K.G. "was sleeping on the bed, the

defendant came home, woke her up, tore her pants.  There was a portion of her

-1-

pants that had a hole in them.  He put his penis inside of her vagina.  She was 16 at the time.  She was at the age of consent, but she did not consent to the sexual contact with him." The court accepted Blakney's plea to the reduced charge of simple assault.

[¶4.]      Blakney also agreed to plead guilty to aggravated assault (domestic) in exchange for dismissal of the remaining charges.  As with his plea to simple assault, his plea to aggravated assault was for the benefit of the bargain.  The State provided the factual basis, reciting that when Blakney and his girlfriend had gotten into an argument on August 2, 2011, Blakney threw her to the ground, choked her, yelled at her, and threatened violence.  Blakney took a folded box cutter with a razor blade, straddled his girlfriend, and held the blade to her throat.  He also raped her.  The court accepted Blakney's pleas.

[¶5.]      Blakney was sentenced to 364 days for the simple assault, with the entire sentence suspended, on multiple conditions, including that he comply with the probationary period to be imposed on the aggravated assault sentence.  For aggravated assault, the court imposed a 13-year penitentiary sentence, suspended on certain conditions, including that he be on supervised probation for 24 months.  Among the probation conditions, the court ordered that he "shall successfully complete any evaluation, counseling, treatment, or aftercare that is directed by the Court, Court Services, and consent to any treatment plan deemed necessary by your Court Services Officer to assist you in being successful while on probation.  And that would include any anger management, domestic violence programs, or the

like." Lastly, the court ordered 120 days in jail, with credit for the 97 days Blakney had already served.

[¶6.] Blakney and his Court Services Officer (CSO) signed a document listing the conditions of probation the circuit court imposed. The CSO directed Blakney to undergo an assessment with the Compass Center to determine his eligibility to participate in the Family Violence Program. But the Compass Center evaluator did not recommend enrollment in the Family Violence Project "at this time," because the incident that led to Blakney's conviction "involved behaviors and circumstances of a sex offense," and because of "the differences of a domestic violence program and a sex offender program, in their respective treatment goals, treatment themes, and monitoring controls." The evaluator informed the CSO that he would consider Blakney for enrollment in the Family Violence Project "at such time that Mr. Blakney is able to present in writing, a full evaluation report and written record of successful completion of all recommendations, from an established sex offender treatment program." The CSO told Blakney that he must follow the Compass Center's recommendation and undergo a sex offender evaluation.

[¶7.] In November 2012, the State moved to revoke Blakney's suspended sentence for his failure to obtain a sex offender evaluation.[1] The State relied on

---

1. On January 13, 2012, the CSO submitted an affidavit and violation report with the circuit court that Blakney tested positive for methamphetamine after a urinalysis was performed. Blakney did not admit to using methamphetamines. The CSO recommended that Blakney appear before the court to determine whether or not probation should be continued. The Minnehaha State's Attorney's Office moved to revoke Blakney's suspended sentence, which motion was dismissed on January 25, 2012.

the violation report filed by Blakney's CSO, which stated that

> defendant was directed to obtain a Family Violence assessment at the Compass Center. On April 25, 2012, this officer received verification that defendant completed this assessment. The Compass Center recommended that defendant receive a "full evaluation report and written record of completion of all successful recommendations made by an established sex offender program." On May 24, 2012, this officer gave the defendant a directive to follow the Compass Center recommendations. As of today's date, the defendant has not provided verification of completion of this evaluation.

The court received the letter from the Compass Center to Blakney's CSO, indentifying the reason Blakney was recommended for a sex offender evaluation.

[¶8.] At an evidentiary hearing, the CSO testified that Blakney did not complete a sex offender evaluation within six months. But the CSO confirmed that the assessment was completed *after* the CSO filed the violation report in November 2012.

[¶9.] The court found Blakney in violation of his probation. In mitigation, Blakney asserted that although he was referred to sex offender treatment, "[h]e did not plead guilty to a sex offense. He did not admit any facts. There was no presentence investigation, to my knowledge, completed in this case. There was simply a benefit of the bargain plea with a fixed amount of jail time." The State presented testimony from Andy Vos of the Compass Center to explain why he recommended that Blakney undergo sex offender treatment. Vos testified that he performed an assessment on Blakney to determine if he would be an appropriate candidate for the Family Violence Project, a program for the treatment of domestic abuse. Based on this evaluation and the underlying allegations of rape, Vos

thought that Blakney needed to undergo a sex offender evaluation before being a candidate for the Family Violence Project.

[¶10.]     The court found that Blakney was ordered to get an evaluation, did not get an evaluation, and, therefore, violated probation.  The court said,

> The Compass Center recommended he receive a full evaluation and written explanation in written record completion by an established sex offender program.  On May 24, the court service officer gave the defendant a directive to follow the Compass Center recommendations.  As of today's date, he's not provided that.

Counsel for Blakney agreed, but argued that since the filing of the violation report by the CSO, "he's met with Mr. Smith."  The court responded, "But afterwards doesn't matter. . . .  I don't tell the court service officer what programming to do, that's their value not mine, for the most part."  At the conclusion of the hearing, the court declined Blakney's request to remain on supervised probation and imposed the previously suspended 13-year sentence, with credit for time served.

[¶11.]     Blakney appeals asserting that (1) a probation condition requiring a sex offender evaluation following a conviction for aggravated assault violates due process by impermissibly deviating from the plea agreement, (2) the circuit court unlawfully delegated its judicial authority to the CSO, (3) a probation condition imposing a sexual offender evaluation following a conviction for aggravated assault is unreasonable, and (4) there is insufficient evidence in the record for this Court to conduct a meaningful review of the circuit court's order revoking his suspended sentence.

## Analysis and Decision

[¶12.] We address only Blakney's second issue, as it is dispositive.[2] He argues that the circuit court improperly delegated its judicial authority when it allowed the CSO to create and impose a condition of probation for a sex offender evaluation and treatment. Because the court did not order him to undergo a sex offender evaluation or complete sex offender treatment, Blakney avers that the CSO could not impose those conditions on him. In response, the State argues that the circuit court did not disclaim responsibility, because it "held three evidentiary revocation hearings, at which the court ratified [the] court services' sex offender counseling order."

[¶13.] This Court has never addressed the issue of improper delegation of judicial power to a non-judicial officer in the context of a CSO's authority to impose a treatment program, counseling, or evaluation as a condition of probation. A review of federal case law, however, reveals that although a non-judicial officer has

---

2. Blakney did not waive this issue. He made known to the circuit court that he disputed the imposition of sex offender treatment as a condition of probation. *See* SDCL 23A-44-13. He further told the court the reason for his objection: he never admitted to being a sex offender and was never convicted of being a sex offender. *See id.* Indeed, Blakney did not use the words "improper delegation of judicial authority," but the rule that we will not address an issue if it was not addressed by the circuit court was never so rigid or inflexible. *See State v. Gard,* 2007 S.D. 117, ¶ 16, 742 N.W.2d 257, 261. It is a procedural rule "devised to promote the ends of justice, not defeat them." *Nature's 10 Jewelers v. Gunderson,* 2002 S.D. 80, ¶ 19, 648 N.W.2d 804, 808-09 (Konenkamp, J., dissenting) (quoting *Hormel v. Helvering,* 312 U.S. 552, 557-58, 61 S. Ct. 719, 721-22, 85 L. Ed. 1037, 1041 (1941)). Here, the State did not claim that Blakney waived this issue and both parties fully briefed the issue for this Court. This is question of substantive law, not a factual dispute.

the authority to decide procedural and administrative details for ordered probation conditions, it is the *court* that must make all the decisions concerning the nature, extent, and conditions of a defendant's probation.[3] This is because the authority to impose a sentence is strictly a judicial function, vested exclusively with the courts by Article III of the United States Constitution. *United States v. Heath,* 419 F.3d 1312, 1315 (11th Cir. 2005); *United States v. Pruden,* 398 F.3d 241, 250-51(3d Cir. 2005); *United States v. Johnson,* 48 F.3d 806, 808-09 (4th Cir. 1995). Thus, so long as the court retains the ultimate authority over the nature, extent, and conditions of a defendant's probation, Article III is not infringed when the court delegates to the non-judicial officer the details with respect to the selection and schedule of a program. *See, e.g., United States v. Allen,* 312 F.3d 512, 515-16 (1st Cir. 2002). Under this approach, any probation conditions, i.e. treatment programs, recommended by a non-judicial officer must be approved by the court before becoming effective. *See, e.g., United States v. Bowman,* 175 F. Appx. 834, 838 (9th Cir. 2006).

---

3.      *United States v. Heath,* 419 F.3d 1312, 1315 (11th Cir. 2005) (improper to delegate to the probation officer the authority to determine *whether* defendant should participate in a mental health program); *United States v. Pruden,* 398 F.3d 241, 251 (3d Cir. 2005) (same); *United States v. Allen,* 312 F.3d 512, 516 (1st Cir. 2002) (proper because the court expressly required defendant to participate in a mental health program and delegated only the authority over the administrative details); *United States v. Peterson,* 248 F.3d 79, 85 (2d Cir. 2001) (proper to delegate to the probation officer the authority to determine the details of the court-imposed condition to participate in a mental health program); *United States v. Kent,* 209 F.3d 1073, 1078 (8th Cir. 2000) (improperly delegated to the probation officer the authority to determine whether defendant would undergo psychiatric treatment).

[¶14.]     In South Dakota, the circuit court is vested with the authority to suspend the execution of a defendant's sentence "subject to such conditions or restitutions as the court may impose." SDCL 23A-27-18. A CSO, on the other hand, is "charged with the responsibility for effecting compliance" with the conditions of probation imposed by the sentencing judge. SDCL 23A-27-12.1. Yet here neither the circuit court's oral directive nor written conditions of probation imposed the condition upon Blakney that he participate in, undergo, or complete any sex offender evaluation, treatment, or counseling. It is not enough that the court directed Blakney to undergo "any" evaluation, counseling, or treatment necessary for him to be successful on probation. Without the directive from the circuit court ordering sex offender treatment, counseling, or evaluation, the CSO could not effect Blakney's compliance with that condition. And a requirement that Blakney obtain a sex offender evaluation and complete a sex offender treatment program is not a decision made by CSOs in their routine supervisory functions. *See Rowland v. State*, 548 So. 2d 812, 813 (Fla. Dist. Ct. App. 1989). Delineating the precise terms of probation constitutes a core judicial function; the task cannot be delegated to a probation officer, treatment provider, or other agency. *See State v. Saavedra*, 406 N.W.2d 667, 672 (N.D. 1987). In effect, the circuit court gave the CSO ultimate authority to determine whether sex offender treatment would be a condition of Blakney's probation, constituting an unlawful delegation of judicial authority.

[¶15.]     This is not to say that the circuit court could not have ordered Blakney to undergo a sex offender evaluation and complete sex offender treatment. Indeed, SDCL 23A-27-20.1 provides that "[t]he court, upon notice to the probationer, a

hearing and good cause, shown, may modify the terms and conditions of a probation[.]" But because the CSO was given ultimate authority to determine Blakney's condition of probation, the court erred when it unlawfully delegated its judicial authority, and in turn, when it revoked Blakney's suspended sentence. We need not reach the remaining issues Blakney raises.

[¶16.] Reversed and remanded.

[¶17.] ZINTER and SEVERSON, Justices, concur.

[¶18.] GILBERTSON, Chief Justice, and WILBUR, Justice, dissent.


GILBERTSON, Chief Justice (dissenting).

[¶19.] I respectfully dissent. Blakney never argued to the circuit court that it unlawfully delegated its judicial authority to the CSO. Blakney also failed to properly raise the issue to this Court. Therefore, Blakney waived the issue of whether the circuit court unlawfully delegated its judicial authority.

[¶20.] "To preserve issues for appellate review litigants must make known to trial courts the actions they seek to achieve or object to the actions of the court, giving their reasons." *State v. Nelson*, 1998 S.D. 124, ¶ 7, 587 N.W.2d 439, 443 (citing SDCL 23A-44-13). We adhere to this rule because circuit court judges "must be given an opportunity to correct any claimed error before we will review it on appeal." *State v. Henjum*, 1996 S.D. 7, ¶ 13, 542 N.W.2d 760, 763 (citation omitted); *see also Gabriel v. Bauman*, 2014 S.D. 30, ¶ 23, ___ N.W.2d ___ ("Had the issue been *specifically* raised below, the parties would have had an opportunity to consider whether additional evidence was needed to decide the issue and certainly would

have had an opportunity to brief the issue for the trial court's consideration." (emphasis added) (citation and quotation marks omitted)). Accordingly, issues not advanced to the circuit court will only be reviewed for plain error. *Henjum*, 1996 S.D. 7, ¶ 13, 542 N.W.2d at 763 (citations omitted); *see also* SDCL 23A-44-15 ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."). But in order for this Court to analyze the merits of a plain error argument, the aggrieved party must present the issue to this Court. *See* SDCL 15-26A-60(6) ("The argument shall contain the contentions of the party with respect to the issues presented, the reasons therefore, and the citations of the authorities relied on."); *see also State v. Fool Bull*, 2009 S.D. 36, ¶ 46, 766 N.W.2d 159, 169 (citations omitted) (providing that Defendant–appellant waived the jury instruction issue because Defendant neither argued the issue nor cited any authority in his appellate brief); *State v. Mulligan*, 2007 S.D. 67, ¶ 25, 736 N.W.2d 808, 818 (citation omitted) (providing that plain error is inapplicable because the Defendant—appellant failed to request application of plain error in her appeal and that "it is elemental that we should limit our review to the arguments that are raised and briefed"). In addition, Blakney bears the burden of showing prejudice and must establish application of the plain error rule. *State v. Beck*, 2010 S.D. 52, ¶¶ 10-11, 785 N.W.2d 288, 293 (citations omitted).

[¶21.]     The transcripts are clear: Blakney failed to raise the issue of unlawful judicial delegation to the circuit court. At no point during the three separate hearings did Blakney mention that the CSO should not have imposed the sex offender treatment condition. The majority opinion states that Blakney adequately

raised the issue when he "made known to the circuit court that he disputed the imposition of sex offender treatment."[4] However, Blakney's statements did not make known to the circuit court that there was a potential unlawful delegation of judicial authority, but rather made known an objection based on the reasonableness of a probationary condition. These are separate inquiries—one addresses *who* is permitted to impose such a condition and the other addresses *what* the condition is. Blakney was given significant opportunity to raise the issue of unlawful judicial

---

4.     The record is unclear as to whether Blakney disputed the imposition of sex offender treatment or attempted to mitigate the sentence by explaining why the condition was not completed in the given time frame. At the first hearing, and prior to the circuit court's revocation of Blakney's sentence, Blakney did not dispute the imposition of the condition. However, immediately after the revocation ruling, Blakney asked if he could put on mitigating evidence:

> **Court:** Given that, the Court finds that [Blakney] is in violation of his probation and revokes – and will commit him to the county jail until disposition on this case.
>
> **Blakney's Counsel:** Judge, can we offer anything in mitigation?
>
> **Court:** Um, you want to address bond?
>
> **Blakney's Counsel:** Yes.

Following this exchange and in the next two hearings, Blakney argued that he was a "square peg in a round hole" during the sex offender treatment because he had to admit to sex offenses when he was not convicted of the same. He further urged the court to take notice of his attempts to complete the treatment since the motion to revoke his suspended sentence was filed. Rather than disputing the imposition of the condition, Blakney's counsel appeared to frame his arguments as an explanation as to why the treatment was not completed. Indeed, at the close of the final hearing, Blakney's counsel stated: "Judge, at the end of the day what we're asking you to do is extend him on probation, put him in [a] sex offender treatment program, and he'll either pass or fail."

delegation; his failure to do so constitutes waiver. *See Henjum*, 1996 S.D. 7, ¶ 13, 542 N.W.2d at 763.

[¶22.]     On appeal, Blakney ignores his failure to raise this issue below and does not make any mention of plain error in his appellate brief. Blakney's failure to argue plain error on appeal clearly demonstrates he has not met his burden in establishing application of the plain error rule. Based on the foregoing analysis and a review of the record, I would affirm the circuit court's revocation of Blakney's suspended sentence.

[¶23.]     WILBUR, Justice, joins this dissent.