**Joe FITCH, Sharlene Parrott, Fie Wash, Donald Brawner, and John Young, Plaintiffs,**

v.

**Elizabeth BELSHAW, State Court Administrator; and Edwin Peterson, Chief Justice of the Oregon Supreme Court, Defendants.**

Civ. No. 83–991–PA.

United States District Court, D. Oregon.

Feb. 6, 1984.

Tom Steenson, Parkinson, Fontana, Schumann, Jones, Ellis & Steenson, Portland, Or., for plaintiffs.

Dave Frohnmayer, Atty. Gen., Rochelle Nedeau, Asst. Atty. Gen., Dept. of Justice, Salem, Or., for defendants.

## OPINION AND ORDER

PANNER, District Judge.

Plaintiffs bring this action for declaratory and injunctive relief pursuant to 42

U.S.C. § 1983. They now seek a summary judgment that the Oregon recoupment statute, ORS 135.055(6) (1981), is unconstitutional under the Sixth and Fourteenth Amendments to the United States Constitution. A class certification hearing was postponed pending determination of this issue. I find the statute impermissibly chills an indigent defendant's exercise of the Sixth Amendment right to counsel and violates the Due Process Clause of the Fourteenth Amendment.

## BACKGROUND

Plaintiffs are acquitted, indigent defendants who were assessed the cost of their court-appointed counsel under ORS 135.055(6), without notice or hearing, and who are now subject to possible arrest and suspension of driver's licenses for failure to make payments on the assessed costs.

Joe Fitch was charged with Driving Under The Influence Of Intoxicants on August 6, 1982. The court determined that Fitch was indigent and granted his request for court-appointed counsel. Fitch was acquitted on April 1, 1983, at which time he was assessed $200 as repayment of attorney's fees. Unable to pay, Fitch signed a Deferred Payment Agreement form which contained the following statement:

> I certify that I will pay the amounts listed above on or before the due date or dates as provided above. I understand that if I fail to pay an installment on or before the due date, that the total balance owing shall become due and payable immediately. I also understand that the Court will pursue legal means to collect the amount due, which may include a bench warrant being issued for my arrest and/or the suspension of my driver's license.

Because of his continued unemployment and indigency, Fitch has been unable to make payments as required by the Deferred Payment Agreement.

Sharlene Parrott was charged with Theft II on July 7, 1982. The court determined that Parrott, who was on welfare and supported two children, was indigent. An attorney was appointed to represent her. On April 26, 1983, Parrott was acquitted. At that time she was assessed $100 as repayment of attorney's fees. Unable to pay, Parrott signed the Deferred Payment Agreement form. Because of continued indigency, Parrott has been unable to make payments.

John Young was represented by court-appointed counsel on his charge of Harassment. He was acquitted on May 12, 1983. At that time the court assessed attorney's fees of $300. Young's attorney objected to the assessment because of Young's unemployment and indigency. The court disregarded the objection and Young signed the Deferred Payment Agreement. Young has been unable to make payments.

Fie Wash was charged with Driving While Suspended in the fall of 1982. Wash was determined indigent and eligible for court-appointed counsel. He was acquitted on June 14, 1983. Wash was assessed $100 for repayment of attorney's fees even though his financial position had not changed from the time the court determined him indigent. Wash could not make payments on the $100 assessment. In October, 1983, he received a Notice of Payment Due, which said:

> To avoid having a warrant issued for your arrest and/or having your driver's license suspended, you must remit the above amount to the Court within ten (10) days of the date of this letter.

The letter did not indicate that Wash had a right to a hearing to dispute the amount assessed or the determination of his ability to repay. Wash has been unable to make payments.

Donald Brawner was charged with two counts of Driving While Suspended. Brawner was unemployed and indigent and received the assistance of court-appointed counsel. The charges were dismissed and the court assessed Brawner $30 for repayment of court-appointed attorney's fees. Brawner signed the Deferred Payment Agreement, but was unable to pay when the time came. A warrant was eventually issued and on October 7, 1983, Brawner

was arrested for failure to pay the assessed costs. He was held for more than six hours before release on his own recognizance.

## STATUTORY SCHEME

Procedures for determining eligibility for court-appointed counsel are set forth in ORS 135.050. A defendant must provide the court with a written, verified financial statement (for both defendant and defendant's spouse) detailing bank accounts, real property interests, automobiles and other personal property of value, earnings and other sources of income, and debts. Counsel should be provided if the court determines the defendant is "financially unable to attain adequate representation without substantial hardship in providing necessities to the person or the person's family." ORS 135.050(2). Court-appointed counsel may not be denied merely because the defendant's friends or relatives have adequate resources to obtain counsel, or because the defendant has deposited or is capable of depositing security for release. *Id.*

The recoupment statute, ORS 135.055(6), authorizes courts to assess the cost of court-appointed counsel against indigent defendants if the court determines there is ability to repay.

> Upon completion of all services by the counsel appointed pursuant to ORS 135.-045 or 135.050, the court shall determine whether the person for whom counsel was appointed is able to pay a portion of the compensation and expenses paid by a county or the state. In determining whether the person is able to pay such portion, the court shall take into account the other financial obligations of the person, including any fine or order to make restitution. In addition to any agreement to repay under ORS 135.050(4), if the court determines that the person is able to pay such portion, the court may order the person to pay the portion to the appropriate officer of the county or state.

ORS 135.055(6).

In contrast to the thorough and documented evaluation of indigency called for by ORS 135.050, the recoupment statute places only one limit on the court's discretion. Consideration must be given to the defendant's other financial obligations, including any fine or order to make restitution. ORS 135.055(6). The statute requires no resubmission of financial statements by the defendant, no finding by the court of changed circumstances, no consideration of hardship to defendant or defendant's family, no hearing in which defendant may dispute the amount assessed or the determination of ability to repay, and no procedure for the defendant to request the court for remission of payment.

## STANDARD

■ Summary judgment is appropriate when there are no disputed issues of material fact and, viewing the evidence in the light most favorable to the opposing party, the movant is entitled to prevail as a matter of law. *Fruehauf v. Royal Exchange Assurance of America*, 704 F.2d 1168, 1171 (9th Cir.1983). Here, the material facts are not disputed and the parties agree that the constitutional challenge raises legal issues properly resolved by the court on a motion for summary judgment.

## SIXTH AMENDMENT VIOLATION

■ Plaintiffs urge a broad holding that a recoupment statute, as such, impermissibly chills an acquitted defendant's exercise of the Sixth Amendment right to counsel. Particular features of this statute, however, allow me to find a Sixth Amendment violation on narrower grounds.

In *Fuller v. Oregon*, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), the Supreme Court upheld a recoupment statute for convicted defendants on Sixth Amendment grounds. The Court emphasized that right to counsel is not chilled if repayment is required only from defendants able to repay without hardship. The Court noted with approval the statute's provisions designed to insure that the burden of repay-

ment would not fall on defendants unable to afford it:

> [S]everal conditions must be satisfied before a person may be required to repay the costs of his legal defense. First, a requirement of repayment may be imposed only upon a *convicted* defendant [ORS 161.665(1) ] .... Second, a court may not order a convicted person to pay these expenses unless he "is or will be able to pay them." § 161.665(3). The sentencing court must "take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose." *Ibid.* ... Third, a convicted person under an obligation to repay "may at any time petition the court which sentenced him for remission of the payment of costs or of any unpaid portion thereof." [ORS 161.-665(4) ]. The court is empowered to remit if payment "will impose manifest hardship on the defendant or his immediate family ...." *Ibid.* Finally, no convicted person may be held in contempt for failure to repay if he shows that "his default was not attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payment ..." § 161.685(2).

*Id.* at 45–46, 94 S.Ct. at 2120–21. The Court rejected the plaintiff's chilling effect argument because the statute "is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work 'manifest hardship' are forever exempt from any obligation to repay." *Id.* at 53, 94 S.Ct. at 2124.

Despite the constitutional success of Oregon's recoupment formula for convicted defendants, the Oregon Legislature enacted ORS 135.055(6) in 1979 with none of the safeguards approved in *Fuller:*

1. Oregon Revised Statute 135.055(6) applies to acquitted as well as convicted defendants. *State v. Arms*, 60 Or.App. 400, 402, 653 P.2d 1004 (1982), *rev. den.*, 294 Or. 461, 658 P.2d 1163 (1983).

2. Oregon Revised Statute 135.055(6) directs courts to determine whether a defendant is able to pay but does not provide a standard for the courts to apply in making that determination. Oregon Revised Statute 161.665(2) requires courts to consider "the financial resources of the defendant and the nature of the burden that payment of costs will impose." In contrast, ORS 135.055(6) requires courts only to consider "other financial obligations" of the defendant. Without more, knowledge of a person's financial obligations is not an adequate basis on which to make a determination of ability to pay without hardship.

3. Oregon Revised Statute 135.055(6) contains no provision for a defendant to request remission of payment. Unless appealed, the judgment appears unalterable.

4. Oregon Revised Statute 135.055(6) provides no assurance that a defendant unable to make payments may demonstrate that the default was not "attributable to an intentional refusal to obey the order of the court or to a failure on his part to make a good faith effort to make the payments." ORS 161.685(2). Instead, the State requests defendants to sign a Deferred Payment Agreement warning that the response to default may be arrest or suspension of driver's license without a prior opportunity for defendant to explain the circumstance of default.

In addition to defects on the face of the statute, State application of ORS 135.055(6) heightens the potential chilling effects on an indigent defendant's exercise of the right to counsel. In many counties the request for appointed counsel is combined with an unrestricted agreement to repay: "If I get a court-appointed attorney, I agree to pay the court back for reasonable attorney fees and costs paid in my defense, as ordered by the court." This form, entitled "Affidavit of Indigency, Request for Appointment of Counsel, Agreement to Repay," was promulgated by the Chief Justice of the Oregon Supreme Court. A Multnomah County District Court Judge testified by affidavit regarding his use of the form:

A. At the beginning of criminal proceedings I inquire, through the use of a court appointed attorney form, of the criminal defendant's hardship status regarding his ability to acquire private counsel.

B. If defendant is unable, without hardship, to acquire private counsel, I then appoint counsel and advise the criminal defendant, through the use of said form, that the defendant must agree to repay any court appointed attorney fee costs, as ordered by the court.

A Yamhill County District Court Judge described his understanding of the recoupment statute in a letter dated September 20, 1983:

In order to maintain continuity for all persons, *regardless of their financial state,* I believe I am obligated to enter an Order requiring each criminal defendant to repay the State for the cost of Court appointed attorneys. I base this upon the apparent intent of the Court of Appeals in the *Arms* case and the expressed position of the State Courts and the forms they have provided for Court appointment applications in which each criminal defendant is required to agree to repay for the cost of his Court appointed attorney in two separate portions of the form.

[Emphasis added.]

Indigent defendants may not hesitate to exercise their right to counsel if they know repayment will be ordered only if there is ability to repay without hardship. But here, an indigent defendant must promise repayment, regardless of ability to repay, at the time of request for counsel. Rather than commit to an unrestricted agreement to repay, an indigent defendant may simply decline representation.

Oregon Revised Statute 135.055(6) allows a judgment to pay costs of court-appointed counsel to be entered against an indigent defendant, with no procedure to insure defendant is or will be able to repay without substantial hardship. In practice, the State draws attention to the potential obligation at the time an indigent defendant requests court-appointed counsel. I find that ORS 135.055(6) unconstitutionally chills an indigent defendant's exercise of Sixth Amendment right to counsel.

## DUE PROCESS VIOLATION

There is a second ground on which the recoupment statute is constitutionally infirm. Oregon Revised Statute 135.055(6) permits the State to deprive indigent defendants of substantial liberty and property interests without notice or hearing in violation of the Due Process Clause of the Fourteenth Amendment.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976). The "specific dictates" of due process may be determined by consideration of three factors:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903.

The property and liberty interests affected here are substantial. Entry of a civil judgment,[1] suspension of a driver's license, arrest and imprisonment[2] are all state ac-

---

1. An order to repay court-appointed counsel fees is docketed as a civil judgment, with like effect, under ORS 137.180. *See State v. Arms,* 60 Or.App. 400, 653 P.2d 1004, 1004–05 (1982), *rev. den.,* 294 Or. 461, 658 P.2d 1163 (1983).

2. The State may be violating its own laws by using its contempt power to punish failure to comply with a judgment for the payment of money. ORS 33.010(1)(e); ORCP 78 C.

tions which may be taken only in compliance with procedural due process. *See, e.g., Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (*convicted* defendants have a liberty interest in parole that requires hearing prior to revocation); *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (state must provide a hearing prior to revocation of driver's license); Oregon Rules of Civil Procedure. Deprivations of liberty or property interests resulting, even indirectly, from exercise of constitutional rights, such as right to counsel, must be closely scrutinized for compliance with procedural due process.

The risk of an erroneous deprivation of an indigent defendant's property and liberty is substantial in light of the statute's failure to provide notice and hearing. The facts presented by these plaintiffs, as well as the State's forms, indicate a practice of summary assessments made with little or no consideration of a defendant's ability to repay without substantial hardship.[3]

Additional safeguards, some of which are already provided convicted defendants under ORS 161.665 *et seq.*[4], would be of great value in making certain that only those defendants who have actually acquired the means to repay will be assessed defense costs. Minimum due process includes written notice of the time, place, and subject of an assessment hearing; written notice of standards the court will apply to determine ability to repay and defenses that may be asserted; records of the attorney's time and the amount of the fee requested; opportunity for defendant to be heard in person and to present witnesses and other evidence; and written findings by the court.

Finally, the government's interest would be served by requiring procedural safeguards. The public interest in fundamental fairness would be satisfied, and the State would be relieved of the fiscal and administrative burden of enforcing numerous uncollectable judgments.

Oregon Revised Statutes 135.055(6) cannot be constitutionally applied in absence of the safeguards of procedural due process. The statute provides neither notice nor hearing. There is no evidence that the State's practice is to supplement the statute with the necessary elements of due process. As a result, indigent defendants are deprived of liberty and property in violation of the Fourteenth Amendment Due Process Clause.

---

**3.** The summary assessment of costs in plaintiff Young's case demonstrates the court's indifference to his ability to repay without hardship. Immediately following the jury's verdict of acquittal, the following conversation took place:

COURT: Now, Counsel, what are your attorney fees going to be in this case?

. . . .

COUNSEL: —in a jury trial is $300. Whether getting more than that is, at least in my mind, open to speculation and possibly litigation. In addition the defendant is indigent and under a series of cases I have here cannot be ordered to pay attorney's fees unless he has—unless the Court makes specific findings with respect to the defendant's ability to pay that—

COURT: You bet. Okay. So here's what we're going to do. Stand up sir, please. Are you working now?

DEFENDANT YOUNG: No.

COURT: Do you have any physical disability?

DEFENDANT YOUNG: No.

COURT: So you can work?

DEFENDANT YOUNG: Yes.

COURT: Okay. Here's what we're going to do, Counsel: I'll make the finding that the defendant does not have the present ability to pay but has the future ability to pay. And what we'll do is I'll make payments of [$300] attorney's fees due as of November 1st of 1983. Okay? And what I want you to do is look for work two places a day five days a week. And I want you to keep a record of where you look for work.

**4.** The Supreme Court did not address a due process challenge to the convicted defendant recoupment statute in *Fuller.* The Court implied in a footnote that due process was satisfied by the schedule of fees published in the Oregon Revised Statutes, and by the hearings provided under the judgment execution statute and under parole revocation procedures. 417 U.S. at 50, 94 S.Ct. at 2123. There is no schedule of fees in the recoupment statute here. Procedures set up for parole revocations are not applicable to acquitted defendants. And, it is unlikely that the State will proceed against an indigent defendant under the judgment execution statute. The State's Deferred Payment Agreement, and the experience of plaintiffs Wash and Brawner, indicate that the State is more likely to act on its contempt power.

## CONCLUSION

By its failure to provide procedures to insure that only defendants able to repay without hardship will be affected, and by the absence of notice or opportunity for hearing, ORS 135.055(6) violates the Sixth and Fourteenth Amendments to the United States Constitution. Plaintiffs' motion for summary judgment is GRANTED.

IT IS SO ORDERED.