930 P.2d 1213 (1997)
131 Wash.2d 230
The STATE of Washington, Respondent,
v.
Paul Curtis BLANK, Petitioner.
The STATE of Washington, Respondent,
v.
Byron Joseph LeBLANC Petitioner.
No. 63839-0.
Supreme Court of Washington, En Banc.
Argued October 8, 1996.
Decided February 6, 1997.
Reconsideration Denied March 12, 1997.
*1215 Pattie Mhoon, Tacoma, Nielsen & Acosta, Eric Nielsen, Seattle, for Petitioners.
John Ladenburg, Pierce County Prosecutor, Barbara Corey-Boulet, Deputy, Mark Von Wahlde, Deputy, Tacoma, Jim Krider, Snohomish County Prosecutor, S. Aaron Fine, Deputy, Everett, for respondent.
*1214 MADSEN, Justice.
Defendants Blank and LeBlanc raise numerous challenges to the constitutionality of RCW 10.73.160, which allows an appellate court to order convicted indigent defendants to pay appellate costs, including the fees for appointed counsel. We find that the statute is constitutional and that it applies in Defendants' cases. We affirm the Court of Appeals decision in State v. Blank, and we grant the State's request for costs in State v. LeBlanc.
On July 29, 1993, Petitioner Blank was convicted of second degree manslaughter. *1216 The court found he was indigent; accordingly, he appealed at public expense, including representation by court appointed counsel. On October 12, 1995, the Court of Appeals affirmed Blank's conviction.[1] On October 18, 1995, the State submitted a cost bill pursuant to RAP 14.2, RAP 14.3, and RCW 10.73.160 for $3,493.26 for costs of reproduction of briefs, court appointed attorney fees, the verbatim report of proceedings, clerk's papers, and the filing fee. Blank objected to the cost bill, arguing among other things that RCW 10.73.160 is unconstitutional. Division Two of the Court of Appeals upheld the constitutionality of the statute, granted the costs requested by the State, and remanded for entry of the recoupment order as part of the judgment and sentence. State v. Blank, 80 Wash.App. 638, 910 P.2d 545 (1996). Blank then sought review. This court granted his motion for discretionary review on June 4, 1996.
Appellant LeBlanc was convicted on November 19, 1992, of four counts of armed robbery and he was sentenced to concurrent terms of 120 months' confinement on each count. He was also ordered to pay court costs, a victim assessment, and restitution. The court found LeBlanc indigent, and his appeal was therefore at public expense, including court appointed counsel. Division One of the Court of Appeals affirmed LeBlanc's conviction on August 21, 1995.[2] The State filed a timely cost bill pursuant to RAP 14 and RCW 10.73.160, seeking $5,290.26[3] for costs of reproduction of briefs, court appointed attorney fees, the verbatim report of proceedings, clerk's papers, and the filing fee. LeBlanc objected to the cost bill, arguing among other things that RCW 10.73.160 is unconstitutional. The Court of Appeals requested supplemental briefing on the issue. When this court granted Blank's motion for discretionary review on June 4, 1996, it also ordered that the pending matter in LeBlanc be transferred from the Court of Appeals and consolidated with Blank's case for purposes of review.
In each of these cases, Defendants' appeals were pending when RCW 10.73.160 was enacted. The Court of Appeals decisions affirming the convictions were issued and the cost bills submitted after the statute became effective on July 23, 1995.
RCW 10.73.160 provides for recoupment of appellate costs from a convicted defendant. "Costs" are "limited to expenses specifically incurred by the state in prosecuting or defending an appeal or collateral attack from a criminal conviction" and include the cost of a verbatim report of proceedings, clerk's papers, and fees for court appointed counsel. RCW 10.73.160(2), (3). Costs of maintaining and operating government agencies are not included. RCW 10.73.160(2). Costs are to be requested by the State pursuant to the procedures set out in RAP Title 14. RCW 10.73.160(3). An award under the statute "shall become part of the ... judgment and sentence." RCW 10.73.160(3). A defendant who is not in contumacious default may petition the court at any time for remission of the costs or any unpaid portion. RCW 10.73.160(4). If payment will impose manifest hardship on the defendant or the defendant's immediate family, the court may remit all or part of the amount due, or modify the method of payment under RCW 10.01.170. RCW 10.73.160(4).
Statutes are presumed to be constitutional. State v. Hennings, 129 Wash.2d 512, 524, 919 P.2d 580 (1996). A party challenging the constitutionality of a statute has the heavy burden of proving its unconstitutionality beyond a reasonable doubt. Id. at 524, 919 P.2d 580; State v. Ward, 123 Wash.2d 488, 496, 869 P.2d 1062 (1994). Defendants in these cases have the burden of proving any unconstitutionality of RCW 10.73.160(4).[4]
*1217 Defendant LeBlanc maintains that RCW 10.73.160 lacks features which are required for a recoupment statute to satisfy constitutional equal protection and right to effective assistance of counsel concerns. He relies upon Fuller v. Oregon, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) and State v. Curry, 118 Wash.2d 911, 829 P.2d 166 (1992).
In Fuller, the Court upheld an Oregon statute which required convicted defendants, as a condition of probation, to reimburse the cost of appointed counsel which had been provided because of indigency, where the defendant subsequently acquired the means to do so. The statute, the Court observed, did not make repayment mandatory. Repayment could be imposed only on a convicted defendant who "is or will be able" to pay. Fuller, 417 U.S. at 45, 94 S.Ct. at 2120-21. Further, the statute provided that the appellate court had to take into account the defendant's financial resources and the burden that payment would impose, and no repayment obligation could be imposed if there were no likelihood the defendant's indigency would end. The statute allowed the defendant to petition at any time for remission of the costs or any unpaid portion. Finally, the statute provided that no convicted person could be held in contempt for failure to repay if he showed that his default was not intentional nor the result of a failure to make a good faith effort to pay. Fuller, 417 U.S. at 46, 94 S.Ct. at 2121.
In upholding the statute, the Court noted that it did not suffer from infirmities identified in James v. Strange, 407 U.S. 128, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972), where the Court relied on equal protection grounds to invalidate a recoupment statute which expressly denied exemptions to criminal defendants which were available in the case of civil judgment debtors. Fuller, 417 U.S. at 46-48, 94 S.Ct. at 2121-22. The Court also rejected the argument that the Oregon statute violated equal protection by discriminating between those defendants who are convicted and those who are not. The Court concluded that given the unavoidable dislocations and hardships which an acquitted defendant must undergo, Oregon's decision that he be free of liability to reimburse the state for the costs of his defense reflected a rational effort to achieve elemental fairness. Id. at 50, 94 S.Ct. at 2123.
The Court also rejected the argument that the Oregon statute violated the right to counsel because a defendant's knowledge that he might have to repay his legal representation expenses might cause him to decline appointed counsel, thus chilling his right to counsel. The Court reasoned that under Oregon's scheme the defendant is entitled to free counsel when he needs it, and the fact that he knows he may have to repay the costs of the services does not affect his eligibility to obtain counsel.
We live in a society where the distribution of legal assistance, like the distribution of all goods and services, is generally regulated by the dynamics of private enterprise. A defendant in a criminal case who is just above the line separating the indigent from the nonindigent must borrow money, sell off his meager assets, or call upon his family or friends in order to hire a lawyer. We cannot say that the Constitution requires that those only slightly poorer must remain forever immune from any obligation to shoulder the expenses of their legal defense, even when they are able to pay without hardship.
... Unlike the statutes found invalid ... where the provisions `had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them,' ... Oregon's recoupment statute merely provides that a convicted person who later becomes able to pay for his counsel may be required to do so. Oregon's legislation is tailored to impose an obligation only upon those with a foreseeable ability to meet it, and to enforce that obligation only against those who actually become able to meet it without hardship.
Fuller, 417 U.S. at 53-54, 94 S.Ct. at 2124-25.
In Curry, this court considered a challenge brought under RCW 10.01.160, a statute having the same features as the Oregon statute *1218 upheld in Fuller. The court held that formal findings of fact on ability to pay are not required for recoupment of trial costs under RCW 10.01.160. The court said that imposition of a repayment obligation lies within the sound discretion of the sentencing court, with protections from abuse of that discretion provided by the statute's directive that ability to pay be considered and procedures for modification of the financial obligation for a defendant ultimately unable to pay. Curry, 118 Wash.2d at 916, 829 P.2d 166. In the course of its analysis, the court said that Fuller implicitly held that several features of the Oregon statute are constitutionally required:
1. Repayment must not be mandatory;
2. Repayment may be imposed only on convicted defendants;
3. Repayment may only be ordered if the defendant is or will be able to pay;
4. The financial resources of the defendant must be taken into account;
5. A repayment obligation may not be imposed if it appears there is no likelihood the defendant's indigency will end;
6. The convicted person must be permitted to petition the court for remission of the payment of costs or any unpaid portion;
7. The convicted person cannot be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court order or a failure to make a good faith effort to make repayment.
Curry, 118 Wash.2d at 915-16, 829 P.2d 166.
LeBlanc maintains that RCW 10.73.160 lacks features 3, 4, and 5 and therefore the statute violates the right to equal protection and the right to effective assistance of counsel on appeal. This contention first raises the question whether the recoupment statute itself must expressly contain all the guidelines or features which assure constitutionality. RCW 10.73.160 does not expressly require, before an order of recoupment can be entered, consideration of ability to pay, defendant's financial circumstances, and whether there is no likelihood indigency will end.
While some courts have reasoned that a recoupment statute itself must expressly contain those conditions rendering it constitutional, e.g., Fitch v. Belshaw, 581 F.Supp. 273 (D.C.Or.1984) (addressing different Oregon recoupment statute than that at issue in Fuller), we have already acknowledged that a recoupment order may be entered in the absence of a statute expressly containing all the necessary procedural safeguards, provided that constitutionally necessary features of a recoupment structure are in place. In State v. Barklind, 87 Wash.2d 814, 557 P.2d 314 (1976), the trial court's order granted a convicted defendant probation conditioned on repayment of the cost of appointed trial counsel, even though the statute permitting monetary assessments as conditions of probation did not contain the guidelines listed in Curry, and RCW 10.01.160, which now authorizes recoupment of trial expenses from convicted indigent defendants, had not been enacted. However, the order itself contained the same features noted by the Court in Fuller, and this court held the constitutional requirements were accordingly satisfied.[5]
We similarly conclude that the procedural guidelines required by the Constitution, and mandated by this court, need not be specifically enumerated in the statute so long as the courts adhere to those requirements. RCW 10.73.160 is not unconstitutional because it does not expressly contain such features.
The second question raised by LeBlanc's argument is whether all of the features listed in Curry are in fact constitutionally necessary.
Specifically, we reconsider whether, prior to including a repayment obligation in defendant's judgment and sentence, it is constitutionally necessary that there be an inquiry into the defendant's ability to pay, his or her financial resources, and whether there is no likelihood that defendant's indigency will end. A number of courts have, as this court *1219 has, treated the characteristics identified in Fuller as constitutionally mandatory guidelines. However, the Court in Fuller did not expressly say all of these requirements are constitutionally necessary. Instead it concluded that a statute having these features survives the particular equal protection and right to counsel challenges made in Fuller. Although we inferred in Curry that the identified features were constitutionally necessary, we were not directly faced with the issue.
Several state courts have concluded that a prior determination of defendant's ability to pay is not constitutionally required. E.g., State v. Albert, 899 P.2d 103 (Alaska 1995); State v. Kottenbroch, 319 N.W.2d 465 (N.D. 1982); Basaldua v. State, 558 S.W.2d 2 (Tex.Crim.App.1977). In Kottenbroch, for example, the court reasoned that while the recoupment statute at issue appeared to be mandatory, the statute was constitutional when construed to require that probation could not be revoked for failure to pay without the court finding that the probationer was capable of repaying the costs of his defense but was unwilling to do so. Kottenbroch, 319 N.W.2d at 473. In Basaldua, 558 S.W.2d at 7, the court similarly upheld a recoupment statute under its previous decisions that probation could not be revoked for failure to pay such costs unless the State showed the probationer was able to pay the costs but intentionally failed to do so.
Federal courts have also reasoned that costs of prosecution may be imposed upon a defendant who is indigent at the time of sentencing, but later acquires the means to pay. In United States v. Hutchings, 757 F.2d 11 (2d Cir.1985), for example, the court held that costs of prosecution under 28 U.S.C. § 1918 could be imposed upon an indigent as part of sentencing. The court further held that defendant could assert a constitutional objection on the ground of indigency only if the government sought to enforce the court order for costs at a time when defendant was unable, through no fault of his own, to pay. Hutchings, 757 F.2d at 14-15.
Moreover, in other contexts, courts have held that monetary assessments which are mandatory may be imposed against indigent defendants at the time of sentencing without any per se constitutional violation. For example, in Curry this court addressed, in addition to the issue whether formal written findings were required before ordering recoupment, a challenge to imposition of a mandatory victim penalty assessment required by RCW 7.68.035. The court held the statute was not unconstitutional on its face despite the fact there was no provision for waiver of the penalty in the case of an indigent defendant. The court approved the reasoning of the Court of Appeals that
"[c]onstitutional principles will be implicated... only if the government seeks to enforce collection of the assessments `"at a time when [the defendant is] unable, through no fault of his own, to comply."'...
"... It is at the point of enforced collection..., where an indigent may be faced with the alternatives of payment or imprisonment, that he "may assert a constitutional objection on the ground of his indigency."
Curry, 118 Wash.2d at 917, 829 P.2d 166 (alterations in original) (quoting State v. Curry, 62 Wash.App. 676, 681-82, 814 P.2d 1252 (1991) (quoting United States v. Pagan, 785 F.2d 378, 381-82 (2d Cir.) cert. denied, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986))). The court observed that the United States Supreme Court has held that it is fundamentally unfair to imprison defendants solely because of inability to pay court ordered fines, citing among other cases Bearden v. Georgia, 461 U.S. 660, 667-68, 103 S.Ct. 2064, 2070, 76 L.Ed.2d 221 (1983). Curry, 118 Wash.2d at 918, 829 P.2d 166. However, "`nothing ... precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law[.]'" Curry, 118 Wash.2d at 918 n. 3, 829 P.2d 166 (quoting Williams v. Illinois, 399 U.S. 235, 243, 90 S.Ct. 2018, 2023, 26 L.Ed.2d 586 (1970)). A "`defendant's poverty in no way immunizes him from punishment.'" Curry, 118 Wash.2d at 918 n. 3, 829 P.2d 166 (quoting Bearden, 461 U.S. at 669, 103 S.Ct. at 2071).
This court concluded in Curry that sufficient safeguards existed to prevent imprisonment *1220 because of inability to pay the mandatory victim penalty assessment because a show cause hearing was required which allowed defendant to show why he or she should not be incarcerated for a violation of his or her sentence, the court could treat a nonwillful violation more leniently, and only intentional violations were subject to contempt proceedings for violations of a sentence. Thus, incarceration would result only if failure to pay was willful. Curry, 118 Wash.2d at 918, 829 P.2d 166. Although this part of Curry does not concern a recoupment statute, this analysis and the United States Supreme Court cases relied upon suggest by analogy that the Constitution does not require an inquiry into ability to pay at the time of sentencing. Instead, the relevant time is the point of collection and when sanctions are sought for nonpayment. If at that time defendant is unable to pay through no fault of his own, Bearden and like cases indicate constitutional fairness principles are implicated.
As noted, RCW 10.73.160(4) provides that a defendant who is not in contumacious default may petition at any time for remission of the payment of costs or any unpaid portion, and "[i]f it appears to the satisfaction of the sentencing court that payment of the amount due will impose manifest hardship on the defendant" or "the defendant's immediate family, ... the sentencing court may remit all or part of the amount due in costs, or modify the method of payment...." The statute thus contemplates the constitutionally required inquiry into ability to pay, the financial circumstances of the defendant, as well as the burden payment will place on defendant and his or her immediate family. In addition, if in the future the State seeks to impose some additional penalty for failure to pay, Bearden, Curry, and similar cases indicate that ability to pay must be considered at that point.
Moreover, common sense dictates that a determination of ability to pay and an inquiry into defendant's finances is not required before a recoupment order may be entered against an indigent defendant as it is nearly impossible to predict ability to pay over a period of 10 years or longer.[6] However, we hold that before enforced collection or any sanction is imposed for nonpayment, there must be an inquiry into ability to pay.
LeBlanc also contends that feature 2 listed in Curry is not satisfied by RCW 10.73.160. The statute expressly states that recoupment may be obtained only from a convicted defendant. LeBlanc argues, however, that under the statute appellate costs could be imposed on a convicted defendant who prevails upon appeal, and this is constitutionally impermissible under Fuller.[7] LeBlanc's reasoning is that under the statute a cost bill can be submitted before all appellate proceedings have ended.
RCW 10.73.160 does not allow appellate costs to be imposed against a defendant who prevails upon appeal, contrary to LeBlanc's argument. The statute says that an award of costs shall become part of the judgment and sentence. RCW 10.73.160(3). If a defendant *1221 prevails upon appeal, no judgment will be, or can be, issued containing any appellate costs award. In any event, both defendants' convictions have been upheld on appeal and Blank's petition for review was denied, while LeBlanc's case was dismissed by this court. Thus, neither defendant is in a position to complain about whether appellate costs could be assessed against a defendant who ultimately prevails in the appellate process.
Defendants argue that application of RCW 10.73.160 is fundamentally unfair because when they were advised of their right to appeal their convictions, they were not informed that they might have to repay costs. Instead, they were informed they had the right to appeal at public expense because of indigency. They reason that imposing a repayment obligation after they made the decision to appeal is offensive to fairness in the absence of notice and an opportunity to be heard. See generally State v. Rogers, 127 Wash.2d 270, 274-75, 898 P.2d 294 (1995). LeBlanc further argues that had he been given notice that he would be ordered to repay costs of appeal, he could have guided the course of his appeal as a nonindigent defendant would, thus controlling the scope of his debt. He reasons that the lack of notice thus leads to an equal protection problem. LeBlanc relies upon both the state and federal constitutions, while Blank relies only upon the state constitution. Neither Defendant argues that the state constitution provides broader protections than does the federal constitution.
A statute which imposes an obligation to pay the costs of court appointed counsel without opportunity for a hearing in which defendant may dispute the amount assessed or the ability to repay, and which lacks any procedure to request a court for remission of payment violates due process. Fitch v. Belshaw, 581 F.Supp. 273 (D.C.Or.1984). RCW 10.73.160, unlike the statute at issue in Fitch, provides that procedures in RAP Title 14 apply, including the opportunity for a defendant to object to the State's cost bill. Moreover, RCW 10.73.160 allows for a defendant to petition for remission at any time.
The Iowa State Supreme Court held that lack of notice of a repayment obligation or the opportunity to provide input into the selection of court appointed counsel and the cost of legal service did not violate fundamental principles of justice. State v. Haines, 360 N.W.2d 791 (Iowa 1985). The court reasoned that the state scheme insured that counsel was available to the defendant at the time it was needed, and that only after a conviction and a determination of ability to pay, despite indigency at an earlier time, was a criminal defendant required to pay. A defendant unable to pay would not be obliged to. The lack of notice is not basically unfair, the court reasoned, because defendant had counsel appointed to advise him when needed, and reimbursement could be ordered only after a hearing. Id. at 796. Other courts have held that due process is not violated by lack of a hearing before imposition of a repayment obligation for costs of court appointed counsel, where a hearing was required before probation could be revoked due to nonpayment, in order to determine whether the defendant was able, but unwilling, to pay. State v. Kottenbroch, 319 N.W.2d 465, 473 (N.D.1982); State v. McLean, 87 Ohio App.3d 392, 622 N.E.2d 402, 404 (1993).
We agree with these courts that it is not fundamentally unfair to impose a repayment obligation without notice and an opportunity to be heard prior to the decision to appeal, provided that before enforced payment or sanctions for nonpayment may be imposed, there is an opportunity to be heard regarding ability to pay.
LeBlanc argues that equal protection is violated as a result of lack of notice of a possible repayment obligation because unlike nonindigent defendants, he was not allowed to control the scope of his debt. He does not explain which of three tests apply to determine whether there is an equal protection violation, see generally State v. Thorne, 129 Wash.2d 736, 770-71, 921 P.2d 514 (1996), and his challenge is inadequately presented. In any event, the legislative classification he seems to identify is between defendants who "are not allowed" to control the cost of their appeal because they lack notice of a potential repayment obligation and defendants who *1222 have such notice and "are allowed" to control such costs. As the State argues, however, nothing in RCW 10.73.160 places any restrictions on a defendant's ability to control the scope and expense of the appeal. Thus the classification which LeBlanc relies upon is not one made by the statute.
LeBlanc also argues RCW 10.73.160 violates due process because it lacks standards to guide in deciding whether appellate costs should be imposed, and fails to provide that costs which may be imposed are limited to reasonable costs. LeBlanc says the statute is, thus, like an 1860 Pennsylvania statute struck down in Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966), which permitted imposition of costs on an acquitted defendant and incarceration until the defendant either paid or provided security. The statute lacked any standards or conditions upon the jury's power to impose costs. Further, state court decisions did not cure the statute's vagueness and lack of standards because the standards imposed by those decisions were also too vague. Id. at 404, 86 S.Ct. at 521.
In contrast to the statute at issue in Giaccio, RCW 10.73.160 does not authorize imposition of appellate costs against an acquitted defendant. Moreover, because we hold that ability to pay (and other financial considerations) must be inquired into before enforced payment or imposition of sanctions for nonpayment, sufficient guidelines are in place. Also, the statute allows a defendant to seek remission at any time. It is not unconstitutional to recoup court costs (including costs of appointed counsel) from an indigent who later becomes able to pay. E.g., Fuller, 417 U.S. at 54, 94 S.Ct. at 2125. As to LeBlanc's argument that the statute does not even limit costs to reasonable attorney fees and costs, he has overlooked RCW 4.88.330, which provides that where a defendant has been found indigent "all costs necessarily incident to the proper consideration of the review" including "reasonable fees for court appointed counsel" will be paid for his appeal of right. Thus, recoupment of appointed counsel's fees under RCW 10.73.160 will necessarily be limited by RCW 4.88.330 to reasonable attorney fees. Further, RCW 10.73.160 refers to RAP Title 14, which only allows recovery of "reasonable expenses." RAP 14.3(a).
Defendants also argue that RCW 10.73.160 chills their constitutional right to appeal under Const. art. I, § 22 (amend.10). LeBlanc argues that in the absence of the guidelines discussed above, see State v. Curry, 118 Wash.2d 911, 829 P.2d 166 (1992), an indigent defendant will be improperly deterred from exercising the right to appeal. He relies by analogy upon Fuller, which he maintains holds that if a statute allows attorney fees to be imposed without consideration of a defendant's financial circumstances, the right to counsel would be unconstitutionally chilled. He says that similarly a defendant would be deterred form exercising the right to appeal if he or she knows a repayment obligation might be imposed regardless of ability to pay. Blank relies heavily on State ex rel. Brundage v. Eide, 83 Wash.2d 676, 680, 521 P.2d 706 (1974), which suggests that recoupment obligations are not supportable on a cost-benefit basis, and reasons the only reason for the statute is to chill the exercise of the right to appeal.
Although Eide has not been overruled, its precedential value has been seriously eroded. The court in Eide relied upon the dissenting opinion in the Oregon Court of Appeals decision in State v. Fuller, 12 Or.App. 152, 504 P.2d 1393 (1973), a view that did not prevail when the United States Supreme Court decided the case, as well as certain ABA standards predating Fuller, and reasoning in a California case, In re Allen, 71 Cal.2d 388, 78 Cal.Rptr. 207, 455 P.2d 143 (1969), which was expressly disapproved in Fuller. As this court recognized in State v. Hess, 86 Wash.2d 51, 53, 541 P.2d 1222 (1975), Eide's reasoning is undercut by Fuller.
Moreover, we have already explained that ability to pay must be assessed before enforced payment or sanctions are imposed for nonpayment. See State v. Kottenbroch, 319 N.W.2d 465 (N.D.1982) (based upon Fuller, there is no unconstitutional chilling of the right to counsel under a recoupment statute which mandates imposition of a condition of probation requiring defendant to repay the cost of appointed counsel; probation could not be revoked for nonpayment unless there *1223 was a determination that defendant was capable but unwilling to repay). As the Court in Fuller held, the right to counsel was not violated by Oregon's recoupment statute because defendant was provided counsel when he needed it, and the
fact that an indigent who accepts state-appointed legal representation knows that he might someday be required to repay the costs of these services in no way affects his eligibility to obtain counsel. The Oregon statute is carefully designed to insure that only those who actually become capable of repaying the State will ever be obliged to do so. Those who remain indigent or for whom repayment would work "manifest hardship" are forever exempt from any obligation to repay.
Fuller, 417 U.S. at 53, 94 S.Ct. at 2124 (footnote omitted). Similarly, a defendant's right to appeal at public expense is provided when needed.
Next, Defendants argue that RCW 10.73.160 cannot be applied retroactively, and that to apply it in their cases is retroactive application. Generally statutes are presumed to operate prospectively, unless there is indication of legislative intent to the contrary. Macumber v. Shafer, 96 Wash.2d 568, 570, 637 P.2d 645 (1981). An exception exists if the statute is remedial and applies to practice, procedure, or remedies and does not affect a substantive or vested right. Id. at 570, 637 P.2d 645; Department of Retirement Sys. v. Kralman, 73 Wash. App. 25, 33, 867 P.2d 643 (1994). However, a statute does not operate retroactively "merely because it relates to prior facts or transactions where it does not change their legal effect. It is not retroactive because some of the requisites for its actions are drawn from a time antecedent to its passage...." State v. Scheffel, 82 Wash.2d 872, 879, 514 P.2d 1052 (1973). "A statute operates prospectively when the precipitating event for [its] application ... occurs after the effective date of the statute...." Aetna Life Ins. Co. v. Washington Life & Disability Ins. Guar. Ass'n, 83 Wash.2d 523, 535, 520 P.2d 162 (1974) (statute requiring insurers to pay an assessment if a fellow insurer received a liquidation order did not involve retroactive application where assessments were based on premiums collected before the statute's enactment; no new legal consequences attached to the preenactment collection of premiums, instead, precipitating event was the liquidation order for a fellow insurer); see In re Estate of Burns, 131 Wash.2d 104, 928 P.2d 1094 (1997) (debt recovery statute could not be applied to receipt of medical benefits before enactment where effect was to change nature of benefits from unencumbered benefits to a debt).
Defendants argue the statute creates a new liability which did not exist when they made their decisions to appeal and they were found indigent and entitled to appeal at public expense. They maintain that due process and equal protection rights to notice that they might have to pay appellate costs are violated if RCW 10.73.160 is retroactively applied in their cases. The Court of Appeals in Blank's case did not address this retroactivity argument; instead it addressed Blank's argument that, as applied in his case, the statute violates ex post facto prohibitions.
We do not agree that applying RCW 10.73.160 in these cases involves retroactive application of a statute. The precipitating event for application of a statute concerning attorney fees and costs of litigation is termination of the case. See Kilpatrick v. Department of Labor & Indus., 125 Wash.2d 222, 232, 883 P.2d 1370, 915 P.2d 519 (1994) (the right to attorney fees, as well as the determination of the amount awardable, is governed by statute in force at the termination of the action); Petersen v. Seattle, 94 Wash.2d 479, 487, 618 P.2d 67 (1980) (same); City of Bellingham v. Eiford Constr. Co., 10 Wash.App. 606, 608, 519 P.2d 1330 (right to costs and attorney fees purely a matter of statutory regulation; unless contrary intent appears from statute, the right to costs and attorney fees and amount thereof governed by statute in force at termination of the action), review denied, 84 Wash.2d 1002 (1974). Moreover, RCW 10.73.160 does not apply unless and until a defendant's conviction is upheld on appeal. Thus, until a criminal defendant's conviction is affirmed, the statute is not triggered and no liability for costs arises. Accordingly, we conclude that the precipitating *1224 event for application of the statute is termination of the appeal and affirmance of a defendant's conviction, despite the fact that this event had its origin in a situation existing prior to enactment of the statute, i.e., taking an appeal at public expense. See Aetna Life, 83 Wash.2d 523, 520 P.2d 162.
Moreover, we agree with the Court of Appeals that RCW 10.73.160 is a procedural statute which does not affect vested or substantive rights, and thus could be applied retroactively in any event. As the Court of Appeals reasoned in the context of addressing Blank's earlier ex post facto argument:
RCW 10.73.160 [is not] substantive. It does not create a new right to attorney's fees, as Blank suggests, and it does not take away a vested right. It does not affect Blank's right of appeal, or his right to public funds to finance it, if he is indigent. He does not have, and never did have, a right to an appeal at public expense, if he can afford to pay for that appeal. The statute simply provides a mechanism for recouping the funds advanced to ensure his right of appeal. It is clearly procedural. See Mackey v. American Fashion Inst. Corp., 60 Wash.App. 426, 430, 804 P.2d 642 (1991).
State v. Blank, 80 Wash.App. 638, 641-42, 910 P.2d 545, review denied, 129 Wash.2d 1017, 917 P.2d 576 (1996).
Applying RCW 10.73.160 in these cases does not involve improper retroactive application of a statute.[8]
Defendants maintain that if RCW 10.73.160 is a procedural rule, as opposed to a substantive rule, it conflicts with CrR 7.2(b) and RAP 15.2(e), and the court rules must prevail. See State v. Smith, 84 Wash.2d 498, 501-02, 527 P.2d 674 (1974). We disagree. CrR 7.2(b) provides that at the time of sentencing the court must advise defendant of his or her right to appeal and of the right to appeal at public expense if the defendant is unable to pay the costs. Defendants say RCW 10.73.160 subverts this right by permitting the subsequent imposition of costs. However, the statute does not concern advisement of rights and does not impair an indigent defendant's right to appeal at public expense.
RAP 15.2(e) provides that defendant's indigency will be presumed "throughout the review" unless the court finds that a party's financial condition has improved so that he or she is no longer indigent. Defendants argue that unless and until the trial court finds they are no longer indigent, their indigency is presumed and imposition of costs cannot be imposed on them. As the State points out, though, an award of costs under RCW 10.73.160 is made after review is completed; thus, there is no conflict with the rule, which provides for a presumption of indigency only "throughout the review."
Defendants also maintain the State is entitled to costs in neither of these cases because it failed to comply with RAP 18.1 by failing to include a request for appellate costs in its brief. RAP 18.1(b) provides that a party having the right to recover reasonable attorney fees or expenses on review should not make a request for these items in the cost bill. RCW 10.73.160 directs that a request for appellate costs must be made in accordance with RAP Title 14, i.e., in the cost bill, but does not refer to RAP 18.1. The State responds that the statute and RAP 18.1 can be harmonized because RAP 18.1 concerns an award of the reasonable attorney's fees and expenses of one party to be paid by the other party, while the statute concerns requiring the defendant to pay his or her own costs.
We agree with the State that defense expenses which may be recouped under RCW 10.73.160 do not fall within RAP 18.1. Further, as we read the cost bills submitted in *1225 these cases, the remaining costs requested fall within those costs awardable under RAP Title 14 and not under RAP 18.1. Accordingly, the State was not obliged to include its requests for costs in its briefs filed in these cases and we need not decide whether there is a conflict between RAP 18.1 and the statute.
Blank next argues that the State's representative, the county prosecuting attorney, is not an "actual party" entitled to recoup fees actually incurred by the Appellate Indigent Defense Fund (AIDF). Blank reasons that therefore only costs of prosecution can be recouped. He cites State v. Kuhn, 74 Wash.App. 787, 875 P.2d 1225 (1994), review denied, 127 Wash.2d 1017, 904 P.2d 299 (1995) and State v. Rogers, 127 Wash.2d 270, 280, 898 P.2d 294 (1995). Both of these cases rest on RAP 14.3(a), which allows an award of reasonable expenses "actually incurred" by a party.
Although RCW 10.73.160 directs that appellate costs shall be requested in accord with the procedures in RAP Title 14, the right to recoup fees incurred by the AIDF arises not from the RAP, but from the statute. Unlike the case in Rogers, where the court noted the State had cited no rule or statute authorizing recoupment of amounts paid by the AIDF, the State relies upon RCW 10.73.160. We reject Blank's argument.[9]
We likewise reject LeBlanc's argument that the State has waived its opportunity to contest his indigency by failing to object to LeBlanc's pursuit of appeal at public expense and failing to present any evidence to contradict the trial court's finding that LeBlanc is indigent. The State's request for appellate costs under RCW 10.73.160 is not a challenge to LeBlanc's indigency or right to appeal at public expense. The statute contemplates that a defendant who has appealed at public expense but is or becomes able to pay appellate costs without hardship may be required to do so.
In the alternative, LeBlanc maintains that even if RCW 10.73.160 can be applied in his case, the court should in its discretion deny the State's request for appellate costs. He reasons that given the order of indigency and his present incarceration, it is extremely unlikely he will ever be able to repay the costs the State seeks. He also says that he will undoubtedly face difficulties finding housing and steady employment, and the added pressure of a repayment obligation will impede his chances for a successful reentry into the community. He argues that the State has failed to show that sufficient funds can be recouped to justify the administrative expenditure to collect the costs, and has offered no reason to justify the imposition of costs in this case.
If in the future repayment will impose a manifest hardship on defendant, or if he is unable, through no fault of his own, to repay, the statute allows for remission of the costs award. There is no reason at this time to deny the State's cost request based upon speculation about future circumstances. As to LeBlanc's argument about justification for recouping costs, the argument is misdirected. As the Court observed in James v. Strange, 407 U.S. 128, 134, 92 S.Ct. 2027, 2031, 32 L.Ed.2d 600 (1972), when addressing a Kansas recoupment statute which had in two years resulted in negligible recovery compared to expenditures, the court's task is not to weigh the effectiveness of the statute but its constitutionality, and "[w]hether the returns under the statute justify the expense, time, and efforts of state officials is for the ongoing supervision of the legislative branch."
LeBlanc has failed to offer any compelling argument justifying denial of the State's costs request.
*1226 We affirm the Court of Appeals decision in State v. Blank. We grant the State's request for costs in State v. LeBlanc and direct the clerk of this court to determine the amount of the award.
DURHAM, C.J., and DOLLIVER, SMITH, GUY, and TALMADGE, JJ., concur.
ALEXANDER, Justice (dissenting).
In my judgment, the majority inappropriately gives retroactive application to RCW 10.73.160. I reach that conclusion because the events which precipitated application of that statute were not, as the majority concludes, the termination of Blank's and LeBlanc's appeals from their superior court convictions. Neither is the statute merely procedural. By concluding that the precipitating events were the termination of the appeals, and by labeling RCW 10.73.160 as procedural, the majority gives the State the benefit of a statute that was not in effect at the time Blank and LeBlanc filed and maintained their appeals. Thus, the majority saddles them with costs of appeal they should not have to pay. For these reasons, and to be consistent with our recent decision in In re Estate of Burns, 131 Wash.2d 104, 928 P.2d 1094 (1997), I dissent.
The majority concedes that "[a]bsent contrary legislative intent, statutes are presumed to operate prospectively only." Adcox v. Children's Orthopedic Hosp., 123 Wash.2d 15, 30, 864 P.2d 921 (1993). An exception to this rule exists if the statute is remedial and does not affect a substantive or vested right. Miebach v. Colasurdo, 102 Wash.2d 170, 180-81, 685 P.2d 1074 (1984).
In determining whether or not a statute operates prospectively or retroactively, it is critical to determine the event that precipitates application of the statute. If the triggering event occurs after the statute's effective date, the statute is deemed to operate prospectively. That is so even if the event has its origin in a situation that existed "prior to the enactment of the statute." State v. Belgarde, 119 Wash.2d 711, 722, 837 P.2d 599 (1992) (quoting Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n, 83 Wash.2d 523, 535, 520 P.2d 162 (1974)). If, however, the precipitating event occurs before the effective date of the statute, the statute is ineffective as to that event unless the statute can properly be applied retroactively. See Macumber v. Shafer, 96 Wash.2d 568, 637 P.2d 645 (1981).
In my judgment, the majority incorrectly concludes that the events that precipitate application of RCW 10.73.160 were the filing of the appellate decisions affirming Blank's and LeBlanc's convictions, events that occurred after the effective date of that statute. Such a conclusion makes little sense because every undertaking that contributed to the costs of their appeals (the filing of the notice of appeal, legal research, preparation of briefs, and oral argument) took place prior to the effective date of the statute.
Furthermore, the majority's determination that the events that precipitated application of RCW 10.73.160 were the termination of Blank's and LeBlanc's appeals is, in my judgment, inconsistent with our recent decision in Estate of Burns. In that case, the State of Washington attempted, pursuant to provisions of former RCW 43.20B.140, to recoup medical care benefits it had paid to two decedents during their lifetimes. That statute, which was enacted in 1987 and amended in 1993, authorized the Department of Social and Health Services to recover the costs of those benefits from a recipient's estate following the recipient's death. The estates of both decedents challenged the State's recoupment efforts, one estate arguing that the statute should not apply to allow recoupment of benefits that were paid prior to the date the statute was enacted and the other estate arguing that it should not have to remit benefits that were paid to the decedent before the statute was amended. In ruling for the estates, we indicated that the precipitating event is "the receipt of the benefits giving rise to the contingent indebtedness, and not the creation of the decedent's estate." Estate of Burns, 131 Wash.2d at 115, 928 P.2d 1094.
Like the situation in Estate of Burns, the benefits Blank and LeBlanc received, which arguably gave rise to their "contingent indebtedness," were acquired before the statute *1227 creating the obligation became effective. Therefore, requiring them to reimburse the State for the costs of their appeals pursuant to RCW 10.73.160, a statute which took effect only after they received the essential benefits of an appeal at public expense, constitutes retroactive application of that statute and contradicts our holding in Estate of Burns.
The majority reasons that it has not retroactively applied RCW 10.73.160 because "[t]he precipitating event for application of a statute concerning attorney fees and costs of litigation is termination of the case." Majority op. at 1223. It cites Kilpatrick v. Department of Labor & Indus., 125 Wash.2d 222, 232, 883 P.2d 1370 (1994), Petersen v. Seattle, 94 Wash.2d 479, 487, 618 P.2d 67 (1980), and City of Bellingham v. Eiford Constr. Co., 10 Wash.App. 606, 608, 519 P.2d 1330, review denied, 84 Wash.2d 1002 (1974) for this proposition. Those cases, in my judgment, are not apt because the statutes at issue there did not, as is the case here, grant a right to attorney fees and costs where none had previously existed. Rather, the statutes providing for attorney fees and costs that this court and the Court of Appeals focused on in those cases were extant when those cases were commenced. Subsequent amendments to those statutes limiting the amount of recovery (Kilpatrick and Eiford) or changing the procedure by which the fees may be claimed (Petersen) did not establish or undermine the pre-existing right. Here, on the other hand, RCW 10.73.160 creates a right to recover costs where none had previously existed.
The majority correctly notes that a statute may be retroactively applied if it is remedial in nature, and that a statute is remedial when it relates to practice, procedure, or remedies, and does not affect a substantive or vested right. RCW 10.73.160 is, however, neither remedial nor procedural. As noted above, the statute in question creates a liability that did not exist for either of these defendant-appellants when they filed their appeals. In such situations, we have found that statutes should not be retroactively applied. For example, in Johnston v. Beneficial Management Corp., 85 Wash.2d 637, 538 P.2d 510 (1975), we held that the Consumer Protection Act, RCW 19.86.090, did not apply to certain transactions entered into before its effective date because the Act was not remedial but instead created a new right of action. We stated there, "[i]t must therefore be presumed that the legislature intended it [the Act] to apply to future transactions only." Johnston, 85 Wash.2d at 641, 538 P.2d 510. We also affirmed the rule that "a statute which creates a new liability or imposes a penalty will not be construed to apply retroactively." Johnston at 642, 538 P.2d 510. Like the statute in Johnston, RCW 10.73.160 should not be retroactively applied.
Lastly, it seems apparent to me that the majority opinion runs afoul of Blank's and LeBlanc's guaranty of due process of law under the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 3 of the Washington Constitution.[1] At no time during the progress of their appeals, from the filing of the notice of appeal to the rendering of an appellate decision, was Blank or LeBlanc informed that they might ultimately be required to repay costs. Indeed, Blank was informed in writing that those costs would be borne by the State. Clerk's Papers at 39-40. To now require Blank and LeBlanc to pay costs that were incurred prior to the effective date of the statute is manifestly unfair.
Although we did not reach the due process issue in Estate of Burns, 131 Wash.2d 104, 928 P.2d 1094 (1997), we did point out the obvious inequity of burdening persons with the new legal consequences of statutes passed after the fact, stating, "[e]lementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly." Estate of Burns, at 110, 928 P.2d 1094 (citing Landgraf v. USI Film *1228 Prods., 511 U.S. 244, ___, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994)). We reasoned there that application of the statute was inappropriate because it deprived the recipients of the medical benefits of "the opportunity to decide whether to accept benefits based upon knowledge of reimbursement requirements." Estate of Burns, at 118, 928 P.2d 1094. Here, by allowing the State to recoup costs incurred before the effective date of the statute authorizing recoupment, the majority essentially ignores the fact that Blank and LeBlanc did not have an opportunity to make an informed decision about whether to accept court appointed counsel or to pursue their appeals without benefit of counsel.
I would reverse.
SANDERS and JOHNSON, JJ., concur.
NOTES
[1] Blank's petition for review of the Court of Appeals decision affirming his conviction was denied by this court. State v. Blank, 129 Wash.2d 1017, 917 P.2d 576 (1996).
[2] LeBlanc's case was dismissed by this court after he failed to file a petition for review after having been granted several extensions of time to file. State v. LeBlanc, No. 63324-0, dismissed March 15, 1995.
[3] The total on the cost bill, $4,956.25, is an incorrect total of the items listed.
[4] Neither of the defendants has argued that provisions of the state constitution should be construed independently of parallel federal constitutional provisions.
[5] A federal statute authorizing recoupment of trial expenses, 18 U.S.C.A. § 3006A(f), lacks legislative guidelines, but has been upheld by courts imposing constitutional requirements as a matter of judicial construction. E.g., United States v. Bracewell, 569 F.2d 1194 (2d Cir.1978); United States v. Thomas, 630 F.Supp. 820 (E.D.Mich. 1986).
[6] Defendants here were both convicted of felonies. RCW 9.94A.145 provides that legal financial obligations of those convicted of felonies may be enforced in the same manner as a judgment in a civil case at any time during the 10 years following the offender's release from total confinement or within 10 years of the entry of the judgment and sentence, whichever is longer. The statute also provides that "[t]he requirement that the offender pay a monthly sum towards a legal financial obligation constitutes a condition or requirement of a sentence and the offender is subject to the penalties as provided in RCW 9.94A.200 for noncompliance." RCW 9.94A.145(10).
[7] Fuller v. Oregon, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974) did not address the constitutionality of imposition of costs against an acquitted defendant, holding only that the Oregon statute at issue which allowed imposition of costs only upon a convicted defendant did not violate equal protection because Oregon could rationally attempt to achieve elemental fairness by not imposing such costs on an acquitted defendant who had already suffered dislocations and hardships as a result of being prosecuted. Some courts have held that recoupment statutes may constitutionally be applied against acquitted indigent defendants who become able to pay, because it puts them in the same position as acquitted nonindigents who must bear their own costs and fees. E.g., Curry v. Wilson, 853 S.W.2d 40 (Tex.Cr.App. 1993); People v. Kelleher, 116 Ill.App.3d 186, 72 Ill.Dec. 211, 452 N.E.2d 143 (1983), cert. denied, 466 U.S. 907, 104 S.Ct. 1686, 80 L.Ed.2d 160 (1984).
[8] Defendants have inappropriately attempted to raise an ex post facto challenge to RCW 10.73.160 in a statement of additional authority. Blank did not raised the ex post facto issue in his briefing to this court, though he did in briefing to the Court of Appeals, and LeBlanc did not raise the issue either in his objection to the cost bill or in supplemental briefing. While the issue is not properly before this court, we nonetheless note that the Court of Appeals correctly held in Blank's case that RCW 10.73.160 as applied does not violate ex post facto prohibitions. State v. Blank, 80 Wash.App. 638, 640-42, 910 P.2d 545, review denied, 129 Wash.2d 1017, 917 P.2d 576 (1996).
[9] In Blank's case the State argues that some issues (lack of notice, that the State is not entitled to recover costs incurred by AIDF, and the alleged conflict between RCW 10.73.160 and CrR 7.2(b) and RAP 15.2(e)) were not made in the objection to the cost bill, and this court should not consider these untimely issues. Although these issues were not raised in the initial objection to the cost bill, the State has responded to them and this court has the benefit of argument on both sides. We are aware that a number of cases have been stayed pending our decision in these cases. Under these circumstances, we conclude that addressing all the issues raised is in the best interests of justice despite any timeliness question in Blank's case. See RAP 1.2(a), (c).
[1] Neither Blank nor LeBlanc contends that the due process clause of the Washington Constitution should be construed to provide broader protection than its federal counterpart. Nor have they engaged the analysis of the criteria set forth in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986). Therefore, I address this issue as though the due process clauses of both constitutions provide identical protection. See City of Spokane v. Douglass, 115 Wash.2d 171, 795 P.2d 693 (1990).